CHITTENDEN,
*January,*
1834.

Thompson
*vs.*
Colony.

</div>

---

WILLIAM P. BRIGGS *et al.* *vs.* SAMUEL WHIPPLE.

<div style="text-align:right">

CHITTENDEN,
*January,*
1834.

</div>

The overseers of the poor, having, by permission of a pauper, rept a crop of wheat, supposed to belong to him, for which a suit was brought, and a recovery had against them by third persons, and the town having thereupon assumed the defence of said suit, and appointed an agent for that purpose ; a tax voted by said town to defray the expenses, and damages and costs recovered against the overseers, is legal.

A town corporation may vote a tax to defend a suit in which they are interested, whether it is directly for or against the town, or between third persons.

A town has a right to take the property of a person chargeable, by his permission, either as a compensation for past, or as an indemnity for future expenses.

When the family of a person who is absent are in want of immediate relief, the over--seers are authorized to afford relief to a certain amount without application.

This was an action of trespass *de bonis asportatis* tried in the county court. The defendant justified as collector of taxes for the town of Richmond, having seized the goods by *virtue of a regular rate-bill and warrant to collect a* town tax which was laid in regular town meeting under the following circumstances :

One Alger was poor, and had been committed to jail in Burlington, leaving his family in a destitute condition. Thompson and Kimball, as overseers of the poor, assisted the family of Alger, and by his directions rept the wheat and credited the avails to the town. For this reaping, Lapham & Co. brought an action of trespass against said overseers. The town thereupon appointed one Jones agent to defend this suit, who proceeded to do so until final judg-

CHITTENDEN,
January,
1834.

Briggs et al.
vs.
Whipple.

ment was rendered against said overseers. The town then voted the tax in the collection of which the defendant took the property of the plaintiffs, who were included in his tax-bill, for the purpose of defraying the expenses, together with the damages and costs recovered against Thompson and Kimball.

The plaintiffs contended that this tax was illegal, and objected to the defendant's showing the records of the town by which it appeared that the town voted the tax in question.—That Thompson and Kimball, as overseers of the poor, accounted to the town for the wheat for which the action was brought by Lapham & Co. against them.— Also that the town, by vote, appointed Jones agent of the town, to defend the suit of Lapham & Co. against said overseers, together with evidence of Jones' having proceeded to defend the suit.

These objections were overruled by the court, and the evidence admitted.

The court decided (and so instructed the jury) that a town corporation may be interested in suits between two individuals : They have the right, wherever they are interested, to raise money by tax to defray the expenses of the suit.—That having in this instance appointed an agent to defend the suit, and afterwards voted a tax to defray the expense, the presumption would be (in the absence of any proof on that point) that they were interested in the suit, and the tax would be *prima facie* valid.—That having appointed an agent, and afterwards sanctioned his proceedings by voting the tax, they were legally bound to pay him for his services and expenses, and that they might lawfully raise a tax for that purpose.—That in this case, if Thompson and Kimball acted in behalf of the town, or as overseers in the outset, in providing for Alger's family, and took the wheat, supposing they had a right to do so, and for the benefit of the town, the town might lawfully adopt their acts and defend the suit against them, and that having done so, they might lawfully levy a tax to defray the expense.

A verdict was rendered for the defendant.

To the several decisions of the court above stated, the plaintiffs excepted :—Whereupon, the case was ordered to the supreme court.

CHITTENDEN,
January,
1834.

Briggs et al.
vs,
Whipple.

*Briggs & Sawyer for plaintiffs*, contended, 1. That it is not competent for a town to take sides in a controversy between individuals, and least of all, to adopt the defence of a tort committed by one individual against another. And

2. That the votes and proceedings of the town, therefore, being unauthorized, ought not to have been admitted as evidence to show the legality of the tax. The very point in question was the right of the town to levy the tax.

3. If the town were competent to appoint an agent, and thus to assume the relation of party or privy to the suit, then the judgment is conclusive, and the facts on which it was rendered, cannot be re-examined in this suit, nor can the character of the controversy, as an *individual controversy*, which is established by the record, be disputed by the defendant. But if the town were incompetent to appoint an agent, *that* can result only from its legal incompetency to lay the tax. In either view, the votes and acts of the town were impropely admitted ; and for the same reasons the acts of Thompson and Kimball were improperly admitted. But,

4. If it were proper to receive the evidence offered by the defendant, to show the character of Thompson and Kimball's acts, with a view to lay a foundation for the town to interfere, it was manifestly wrong to exclude plaintiff's evidence to rebut it. Defendant contends that Thompson and Kimball, being overseers of the poor, procured an authority from Alger to take the property. Is it not competent for the plaintiffs, then, to show that they never had such authority—they knew of Lapham & Co's previous right, and that their taking was a wanton trespass ?

5. Plaintiffs contend, on the facts presented by the case, that it is not competent for a town, or a majority of a town, to lay a tax for the purposes assumed in the present case.

1. Towns may lay taxes for three specified purposes : " for all other necessary and incidental charges, within said town," and " to prosecute and defend their common rights and interests."—Rev. Stat. p. 414. The " necessary and incidental charges" here mentioned, must be such as unavoidably result from the exercise of their admitted powers.—1 Mass. Rep. 188.

13.

The case finds that Alger's family were not a town charge, but only *likely to be ;* and his property was taken by Thompson and Kimball to *indemnify* the town. Now there are only two cases where towns can take indemnities against the support of the poor.—Rev. Stat. p. 372, sec. 9, & p. 14, sec. 14.

It was never contemplated by the legislature that towns or their agents should have an inquisitorial power to pry into the concerns of individuals—to exact indemnities, or to take the property of those who *may* become paupers, and deal it out at their pleasure.—See Stat.—Chip. Rep. 44, *Selectmen of Bennington* vs. *McGennis.*

The act of the overseers therefore was not within their powers or those of the town's, nor in execution of any purpose or object contemplated by the statute. Alger's " authority" was not binding on him or his creditors for that reason.—6 East. 109, *Cole* vs. *Gower.*—1 Camp. 396, *Townson* vs. *Wilson.*—1 Mass. Rep. 188, *Bangs* vs. *Snow et al.*—*Stetson* vs. *Kempton,* 13 Mass. 272, 371.—D. Chip. Rep. 82, *Wilcox* vs. *Sherwin.*—1 Vt. Rep. 82, *Bates* vs. *Hazeltine,* 2.—4 Vt. Rep. 601, *Waters* vs. *Daines.*—Sw. Dig. 754.—2 Con. Rep. 429.

Nor is this view of the subject weakened by the admitted right of a town to receive poperty in some cases not provided by statute—as for instance, they may take a deed of land, (13 Mass. 371, *Worcester* vs. *Eaton,*) or a bequest, &c. In all these cases, the distinction will be found to be, that towns are *passive* not *active.* A town may *receive* a gift of a manufactory, but cannot raise money by tax to *buy* it, or *carry it on.*

*Charles Adams for defendant.*—I. The authority of towns to prosecute and defend suits, (Stat. p. 156) is not limited to suits in the names of the towns, but extends to all suits against whomsoever they may be, in which towns have an interest.

Towns are, by various laws, charged with the care of public lands, and directed to lease them.—*Worcester* vs. *Eaton,* 13 Mass. 371.

It has also been decided in Massachusetts, that a town may accept a deed of land. In all cases, towns must of

necessity lease out their lands, and if their tenants are su- <span>CHITTENDEN,<br>*January,*<br>1834.</span>
ed, they ought of right to defend the suits. We have
an instance of that in *Pomeroy* vs. *Mills*.

<span>Briggs et al.<br>*vs.*<br>Whipple.</span>

II. The authority of towns to raise money to defend
their common rights and interest, (Stat. p. 414) is suffi-
ciently broad to embrace this case.

1st. That interest of the town, which it is their duty and
right to defend, is not dependent upon the event of the
suit.

2d. But towns have a right to defend any suit, when in
good faith they suppose they are interested. ·

3d. The suit of *Pomeroy* vs. *Mills* is an instance of this :
also the suits which have been determined relative to the
propagation right.

III. The town had a right to take a conveyance of the
wheat-field for Alger in consideration of the support ren-
dered his family.

It is not necessary to contend that a pauper who has
been aided by the town, is liable to a suit in behalf of the
town ; but if the pauper chooses voluntarily to repay the
town, the town have a right to receive. The case of *Wor-
cester* vs. *Eaton* is a case in point on that subject.

IV. It is of no importance whether the meeting at which
Jones was appointed agent, was legally warned or not; for
if Jones acted under the appointment, the town would be
estopped for denying his authority.

The opinion of the court was pronounced by

MATTOCKS, J.—The question in the case is, whether
the inhabitants of the town were authorized by law to vote
the tax in question. If they were, the proceedings being
all regular, the defendant has made out his justification.
If they were not, the plaintiffs were entitled to recover.
The latter clause of the 16th section of the act relating to
town-meetings, is in these words : " Also to grant or vote
any sum or sums of money, to prosecute and defend their
common rights and interests." Was the subject out of
which the law-suit grew, which they voted to defend, of
such a nature that the town could properly have a right
or an interest therein? What was it? That one Alger was
poor, and had been committed to jail in Burlington, leav-

CHITTENDEN,
January,
1834.

Briggs et al.
vs.
Whipple.

ing his family in a destitute condition—that Thompson and Kimball, as overseers of the poor, assisted the family, and by direction of Alger, rept some wheat, and credited the avails thereof to the town—that for this reaping, Lapham & Co. brought an action against Thompson and Kimball, the overseers. The town, by their vote, assumed the defence of the suit, and appointed an agent, who defended until final judgment was rendered against the defendants in that suit: and for the expenses in so defending, and for the damages and costs recovered against the overseers, the tax was made. The town was bound to support the poor: They did so, to a certain extent. They had a right to take the standing wheat of Alger, if he so directed, either as compensation for past, or as an indemnity against future expenses of his family; and having done so, and the avails being in the possession of the town, and when Lapham & Co. brought trespass against their servants, the right of the town to this property was directly drawn in question, and the town in defending their suit, were defending their servants, and also property which they had received as a town, and which they must have considered their own. What was this but defending their common rights? Pending the action of trespass, the possession of, and claim to the property were in the right of the town; that is, a supposed right; and that is all the right any party can have while the suit is in progress: No certain right can be acquired, until the final trial; and then it would be too late to prosecute or defend that which was already won or lost. It is during the uncertainty of the result that the defence must be made; and, as Lord Mansfield said, in a case of a wager relating to the event of a law-suit, "It is previously only uncertain that the decision of a suit *will be* such as it shall afterwards *happen to be*." The town then were defending their right until the cause was finally decided against them, and there ends the defence of every right in a court of law. It cannot be the meaning of the statute that a town can only tax themselves to pay the expenses of the suits they gain, leaving no way to pay the greater expenses of those that are lost. But if the word "rights" means *legal rights*, and the result of the suit shows the right was on the other side, and the overseers

CHITTENDEN,
January,
1834.

Briggs et al.
vs.
Whipple.

consequently wrong, yet the town had an interest in defending the suit. The overseers, in attempting to perform their general duty, mistook the law or the fact, and committed a trespass, putting the avails into the common fund of the town. If the suit was successfully defended, the town would retain this fund—otherwise not; for they could not disown the act of the overseers, and still retain this fund. We consider, therefore, that the town, in defending the suit of Lapham & Co. against Thompson and Kimball, were defending their " common rights and interests," or at least their common interest; and that they were authorized, by law, to vote a tax to defray the expenses thereof. It is quite obvious, that towns, like other corporations, act by their agents. It may often happen that they are interested in suits in which they are not a party upon the record.

On the trial of this cause, after the plaintiffs had rested, the defendant offered evidence tending to show that the wheat was not rept by Alger—that Thompson and Kimball knew that Lapham & Co. had a previous bill of sale of the wheat, and that no application had been made by Alger to the overseers for assistance ; which evidence being objected to, was rejected by the court. This evidence might, with propriety, have been admitted, as it tended to disprove some part of the previous showing on the part of the plaintiffs ; and we incline to think it should have been admitted : But if all that was offered had been shown, still the tax would have been legal, which was the only point in the case. The error of the county court in excluding it was venial, and no wrong has been done that affected the merits of the cause. As to there having been no application by Alger to the overseers for relief, none was necessary ; at least from him, who was in jail at a distance from his home and family who were relieved. The statute provides that if any poor person shall be under the necessity of immediate relief, the overseers may draw on the treasurer to a certain amount. Suppose the wheat was not rept by the direction of Alger, and that evidence to this effect had been admitted, there would have been evidence both sides on this point ; and should this question have been left to a jury, and the legality of the tax

CHITTENDEN,
January,
1834.

Briggs et al.
vs.
Whipple.

made to depend on the finding on the point, as to the knowledge of Thompson and Kimball of the bill of sale? They might have known this, and still supposed it without consideration or fraudulent. The town must be supposed to have known all the circumstances; and, when they adopted the doings of the overseers, by undertaking to defend the suit against them, they took the risk of all these questions; and in the present enquiry as to the validity of the tax, it is of little importance to know the particular merits of the trespass suit, or whether the town acted judiciously in attempting to defend it, as the subject matter was within their legal powers. The tax was legal. We believe the testimony offered, if admitted, ought not to have altered the decision of the case.

The judgment of the county court is affirmed.