JOHN VAN SICKLEN AND OTHERS v. THE TOWN OF BURLINGTON, WILLIAM WESTON, ELIAS LYMAN, HENRY WHITNEY, AND CHALON F. DAVEY.

[IN CHANCERY.]

*Authority of towns in the appropriation of money. Their right to make appropriations for the benefit of engine and hook and ladder companies.*

The inhabitants of a town cannot impose a tax or appropriate their funds for objects entirely foreign to their political or municipal duties; but they may do so for objects within their duty and jurisdiction as municipal corporations, and for the purpose of fully enabling them to discharge that duty.

The concluding provisions of the 79th section of the 15th chapter of the Compiled Statutes, that towns may grant money " for the prosecution and defence of their common rights and interests, and for all other necessary and incidental charges within said town," are not limited to the objects specially mentioned in the preceding part of that section, but extend to other matters appertaining to the rights and duties of towns.

These provisions embrace that large class of miscellaneous subjects, affecting the accommodation and convenience of the inhabitants, which have been placed under the municipal jurisdiction of towns by statute or by usage.

If towns in their corporate capacity, own valuable property which is exposed to injury and destruction by fire, they may, in that capacity, take precautionary measures against such injury and destruction, either by the purchase of engines, hose, hooks and ladders, or by the appropriation of money in aid of engine, and hook and ladder companies in their respective towns.

APPEAL from the court of chancery. The orators alleged in their bill that they were residents and tax-payers in the town of Burlington; that said town at its annual March meeting in 1853, elected the defendants, Weston, Lyman and Whitney, selectmen, and the defendant Davey, treasurer of said town; and passed the following resolution, "Resolved that the town appropriate a sum, "not exceeding six hundred dollars, out of any moneys now in the "treasury, not otherwise appropriated, for the fire department, to "be disbursed to the engine and hook and ladder companies, as the "selectmen in their discretion may deem necessary;" that the orators were opposed to and voted against the passage of said resolution; that said engine and hook and ladder companies were incorporated by acts of the legislature, and not under any authority of the town of Burlington, and that said town had no interest in the engines or other property of said companies; that the town had but a small amount of property liable to be injured by fire, and that the property of the orators was so situated as not to require the aid of, or be benefitted by the said fire department and engine and hook and ladder companies; that the appropriation was illegal and unjust, and compelled the orators to pay taxes to support and protect the private property of the inhabitants of the village of Burlington, for which the orators received no equivalent; and prayed that said selectmen might be enjoined from directing and the treasurer from making any payment from the town treasury, in pursuance of said vote.

A temporary injunction in accordance with the prayer of the bill was granted on the 22d of March, 1853.

The defendants filed their answer admitting the interest of the orators, as tax payers, in the matters complained of; and further setting forth that the resolution was passed as stated by the orators; that the engine and hook and ladder companies referred to

were incorporated by the legislature and not under any authority of the town of Burlington as a corporation. That said companies were established for the purpose of protecting both public and private property from destruction by fire and had become efficient and useful and almost indispensably necessary for that purpose; but that they had been subjected to heavy expenses in the purchase and repairs of their engines, uniforms and other property, to which additions and repairs were needed, and that at the time of passing said resolution, they were so situated that without pecuniary aid it seemed probable they would be obliged to disband. That the town of Burlington, as a corporation, was bound to maintain its proportion, which was about three-fourths, of the bridge across the Onion river at Winooski Falls, about one and a half miles from the business centre of Burlington, and that its interest in said bridge was of the value of $6,000, that it had an interest in the court house of the value of $2,000, and that the town had in the process of erection and nearly completed, a town hall, which when completed would cost about the sum of $25,000, and buildings upon its farm for the support of its poor of the value of from $1,000 to 1,500,—all of which were exposed to damage and destruction by fire; and might be saved therefrom by means of said companies could they be enabled to maintain their organization and efficiency; and that with this view, the selectmen were intending to direct the treasurer to pay over such portion of the sum appropriated as in their opinion was necessary to enable said companies to keep up an effective organization. The answer denied that the appropriation was illegal or unjust to the orators.

The answer was traversed and testimony taken, which related principally to the value of the town's property referred to in the defendants' answer. The court of chancery, at the November Term, 1854, decreed that the injunction granted on the filing of the bill be made perpetual, from which decree the defendants appealed.

*Geo. F. Edmunds*, for the defendants.

Towns have power, under the statute, to raise taxes, and therefore to appropriate money " for the prosecution and defence of their " common rights and interests, and for all other necessary and inci- " dental charges within said town." Comp. Stat. p. 122, § 79.

and as this power is given in addition to certain other specified powers, it was evidently intended to authorize such, other acts, than those mentioned, as come fairly within the sphere of promoting the general good of the town, as distinguished from individual interests. *Willard* v. *Newburyport,* 12 Pick. 227.

The argument, that a town can do nothing but perform the duties enjoined, by law is not sound. But very few of the powers granted to and exercised by towns are such as they are obliged to exercise. It is left to their discretion whether, and to what extent, they will exercise them. The buiding of particular roads and bridges, town houses, poor houses, laying out of commons, and the prosecution and defence of suits are instances of this sort.

A town then may (although not bound to do so) take measures to protect its corporate property, by insurance, by making it fire proof, by contracts for its preservation when in danger, or by furnishing to those, whose general duty it is to extinguish fire, the means necessary to that end. The jurisdiction and power over the subject being vested in the town, the manner of its exercise must necessarily be left to its discretion or to that of its officers, so long as they act in good faith. Merely then for the protection of corporate property, without regard to the general propriety of the act, the town was authorized to appropriate this money.

Independent of its connection with corporate property the appropriation was within the powers of the town. It was for an object of the highest general good; it applied to the material interest of the whole town and of all its tax payers. It has the same relation to the property, that the prevention and cure of contagious or malignant diseases has to the persons of the citizens.

Under the statutes of Massachusetts, which are, in substance, identical with our acts of this description, have always been upheld. *Stetson* v. *Kempton,* 13 Mass. 272. *Willard* v. *Newburyport,* 12 Pick. 227. *Torrey* v. *Millbury,* 21 Pick. 64. *Allen* v. *Taunton,* 19 Pick. 485. *Spaulding* v. *Lowell,* 23 Pick. 71. *Hardy* v. *Waltham,* 3 Met. 163. *Hazen* v. *Strong,* 2 Vt. 427.

*Underwood & Hard,* for the orators.

The powers of towns to raise money by taxation is limited and defined by § 79 and 80 of chap. 15, Comp. Stat. p. 122.

It is claimed that the towns have the authority to appropriate the money in the manner complained of by virtue of the last clause of said § 79. The " prosecution and defence of their common rights and interests" must be limited to such *rights* and *interests* as appertain to the *town* as a *corporation*, and does not embrace such rights and interests as appertain to a majority of the inhabitants in their individual capacity. And " all other necessary and incidental charges within such towns" must be confined to charges against such towns as corporations which they are bound to discharge, and does not extend to relieving or protecting individuals in their private capacity. " Such *other necessary* and incidental charges" must be *ejusdem generis*, or such as are incidental to the matters before referred to.

Towns have no power to appropriate money to objects over which they have no control, or to discharge duties not imposed upon them by law. *Drew* v. *Davis et al.*, 10 Vt. 506. *Beaty* v. *Lessee of Knowler*, 4 Pet. 167, 168, 169. *The People* v. *Works*, 7 Wend. 486.

The fire companies in this case are incorporated companies, owing no obligation to the town of Burlington, nor in any manner under their control; and however useful it may be to have such companies, we must look to some other power than town meetings to establish or support them.

The town did not vote the money to aid in the extinguishment of fires, but to be paid over to said companies in the discretion of the selectmen, to be used by said companies at pleasure. No obliligation is made on the part of the companies to render any service to the town for the money, or understanding that it is to be used for the benefit of any of the inhabitants of the town.

It is manifest that this power was not intended to be conferred on towns, from the fact that the legislature has provided for it otherwise, Comp. Stat. ch. 16, § 10, 18; Laws of of 1854, p. 9.

The opinion of the court was delivered by

ISHAM, J. Without recapitulating the facts stated in the bill and answer, it is sufficient to state generally the facts which are considered important, and upon which the questions in this case arise. It it admitted, that on the 8th day of March, 1853, the

inhabitants of Burlington, at a legal meeting warned for that purpose, appropiated by vote, the sum of six hundred dollars for the use of the fire engine, and hook and ladder companies, which were organized in the town. The money thus appropriated was to be disbursed to those companies, as the select men, in their discretion, might deem necessary. It appears that previous to, and at the time of the passage of that vote, there were in the town three companies which were incorporated, and duly organized for the purpose of protecting the property of the place from loss and injury by fire; that the companies were possessed of fire engines, hose and other necessary apparatus for that purpose, but that the same were out of repair, and insufficient to be of any service or practical use. It also appears, that the town of Burlington, in their corporate capacity, are possessed of property of considerable value which, with that of its inhabitants, is exposed to destruction and injury by fire, and from the vote of the town we are led to believe, that the inhabitants are desirous of adopting those usual and ordinary means, which are employed to guard against such injuries. The petitioners object to the application of that money for that purpose, and they insist that the town have no authority to make such an appropriation, or pass such a vote. The only question in the case arises upon the legality of that vote of the town, and their right to make that appropriation from their corporate funds. The decision of this question depends exclusively upon the construction which is to be given to the 79th section of the Comp. Stat. 122, which provides, " that any town may grant and vote such sums of money as they " shall judge necessary for the maintenance and support of the poor; " for laying out and repairing highways; for building and repairing " bridges; for the prosecution and defence of their common rights " and interests, and for all other necessary and incidental charges " within said town." It has been insisted, that, by the general words of this act, no power is given to the town to lay taxes, or appropriate its funds except for the specific purposes mentioned in the act; that its general language is to be limited to those purposes, and that being a corporation, their powers are to be strictly construed.

There is no doubt, that towns or municipal corporations, as well as private corporations are limited to the exercise of such powers

as are expressly given them; that is, the inhabitants of a town cannot by a vote impose a tax, or appropriate their funds, for objects entirely foreign to their political or municipal duties—such as to build a county jail, 10 Vt. 506; to repel the public enemies of the country, 13 Mass. 272; or to build a county road, 11 Pick. 396.    But when the object is within their duty and jurisdiction as a municipal corporation, they may exercise such powers as will enable them fully to discharge the duties devolving upon them.    Our statute on this subject is nearly a transcript of that of Massachusetts. In that state it is provided by statute, "that towns may vote money " as they shall judge necessary for the support of the ministry, " schools, the poor, and other necessary charges arising within the " the same town."    On the question whether this latter and general clause is limited to the objects previously specified, CH. J. SHAW, in the case of *Willard* v. *Newburyport,* 13 Pick. 230, observed, " that it seems very clear that this statement was not intended to " be an enumeration of objects and purposes for which towns may " raise money, but the expression of a few prominent objects by " way of instance, and a general reference to others, under the term, " other necessary charges."    On the same construction, the general words in our act, that money may be voted "for the prosecution " and defence of their common rights and interests, and for all other " necessary and incidental charges," must not be limited to the objects specially mentioned in that act, but will be extended to other matters that fall within their rights and duties.

It has always been found difficult to define the limits within which towns may act, or give a definite rule, by which we may ascertain when their votes will be deemed illegal.    CH. J. SHAW observed, " that perhaps no better approximation to an exact description can " be made, than to say that it embraces that large class of miscella- "neous subjects affecting *the accommodation and convenience* of the " inhabitants, which have been placed under the municipal jurisdic- " tion of towns, by statute or by usage."

This construction of the act, we think, is not unreasonable; and is required, as being necessary for the existence and government of towns, and which should be given to the provisions of our statute.    The application of this construction of the act, is all that remains to make a disposition of the case.    That this town is the

owner of property of the value of several thousand dollars which is exposed to injury and destruction by fire, is distinctly stated in the case. If they may own such property in their corporate capacity, it is equally their duty, in that capacity, to protect it from destruction, and from every injury to which it is exposed. This duty grows out of, and is necessarily connected with that right. Of the mode and manner in which that duty is to be performed, they must necessarily be the judges. If fire is considered by them to be the dangerous element against which they are to exercise their precaution, they may purchase engines, hose and ladders for that purpose, and procure the assistance of men to use them, so as to render the property so purchased effective, and useful in times of necessity and danger. To this extent, we apprehend, no reasonable doubt can exist in the case. But an objection is urged against this particular appropriation, and the particular manner in which it was made. It is said, that no property has been purchased by the town, and that this vote is a gift of its corporate funds to these different private corporations, and that over which, and over them, the town can exercise no control. In relation to the corporate character of these companies, it is proper to observe, that they were incorporated for no purposes of profit, or to enable them to hold property for purposes aside from the particular object of their association. Their sole object was to secure order, efficiency and government when contending with that element, and without which their engines, hose, ladders or other apparatus will be of little use or benefit to the town or its inhabitants. Whether the town by that application of its funds will become to any extent the owners of that property, after the repairs are made, we are not called upon to decide. It is sufficient that the town are satisfied, that by this appropriation of its funds, that object is secured to them, and that the property when repaired, will be held and used for the purposes for which the appropriation was made. The fact also that the money is to be disbursed by the selectmen in their discretion, enables them to secure the exclusive use of that property for the benefit of the town, and its inhabitants.

The question as to the validity of such a vote, and for such objects, has never been decided in this state ; yet such votes and appropriations by towns have been sustained in Massachusetts,

under a statute, which we have seen is similar in its provisions to our own. Such was the case of *Allen* v. *Taunton,* 19 Pick. 485, in which it was held that, a town are authorized to appropriate money for the repair of fire engines used for the purpose of extinguishing fires therein, whether they belong to the town or were purchased by private subscriptions. The court remarked, " that " if the town has authority to purchase engines, they may also unite " with individuals, and in such proportions as to interest, as may be " equitable and just between the parties. Such an arrangement " may often be found convenient, when from the location of the " inhabitants, any considerable number of them may not fully par- " ticipate in all the benefits." In the case of *Torrey* v. *Millbury*, 21 Pick. 64., the town voted to raise and appropriate the sum of four hundred dollars to purchase a fire engine, provided an equal amount was raised by individual subscriptions for the same purpose. The assessment and appropriation was held valid and binding on the inhabitants of the town. It is to be observed, that in the cases cited, it did not appear that the towns had any corporate property to be benefitted by that appropriation; but its legality was sustained upon a general duty resting upon municipal corporations of that character, to provide whatever shall be deemed " an object of common convenience and necessity." It is upon that general duty, the case of *Willard* v. *Newburyport*, 12 Pick. 227, was decided in which it was held, that an appropriation for the repair of town clocks was valid, though the clocks were originally purchased not by the town, but by different individuals. So too, for the erection of a market-house for the convenience of the inhabitants, 23 Pick. 71, and for the same purpose, to construct aqueducts and reservoirs of water, as was decided in the case of *Hardy* v. *Waltham*, 3 Met. 163. In that case, the town was enjoined from the payment of the money, in pursuance of a vote of the town, but the appropriation was deemed legal, and the injunction was dissolved, and the bill dismissed.

It is necessary in this case, however, only to say, that when a town, in their corporate capacity, is the owner of property exposed to injury and loss by fire, they may make appropriations from their corporate funds for its preservation, and protection from fire ; and that the inhabitants of the town are the proper judges, whether

the engines, and other property for that purpose, shall be purchased, or the money be appropriated in the manner in which it has been under this vote of the town. In either event, the appropriation is binding on the town, and its inhabitants.

The decree of the chancellor is reversed, and the bill dismissed with costs.