ORA L. BURNHAM *v.* TOWN OF CHELSEA.

*Soldier's Bounty.    Drafted Men.*

.Previous to the statute of 1862, [Gen. Sts., 118, §1, towns had no authority to vote money to be paid to volunteers; nor to drafted men previous to the act of 1863, No. 2.

A vote to pay certain drafted men named, passed subsequent to the act of 1863, *held* not a ratification of a vote to pay drafted men generally, which was passed previous to said act. So the plaintiff, a drafted man, being embraced in the terms of the vote first passed, and not named in the last vote, could not recover the bounty voted in the former vote.

ASSUMPSIT, to recover the sum of three hundred dollars, pursuant to a vote of the town of Chelsea on the 24th day of July, 1863. Plea, the general issue, and trial by the court, December term, 1869, PECK, J., presiding.

The plaintiff was drafted from the town of Chelsea in August, 1863. The following votes of said town were introduced :

*Town Meeting, July* 25, 1863.

Article 2. " To see if said meeting will vote to pay the sum of three hundred dollars to each of the men that shall be drafted, under the present conscription law of the United States."

Voted—" To pass and adopt the following resolution, to wit :

" *Resolved*, That the selectmen of the town of Chelsea be directed, and they are hereby directed, to procure upon the credit of said town, and to pay to each man or his legal representatives, that shall be drafted from said town under the present draft, and also shall be accepted and actually join the army of the United States, in person, or by a legal substitute, the sum of three hundred dollars, to be paid on the first day of January, A. D. 1864."

*Town Meeting, March* 1, 1864.

Article 9. " To see if the town will vote to pay William Packer, Estes Conant, and George F. Reed, drafted men from said town, who have gone into the service of the United States, $300 each, as bounty."

Voted—" On Article 9th, to pay William Packer, Estes Conant, and George F. Reed, drafted men in the service of the United States, each $300 bounty, and that the selectmen draw orders on the treasury to pay the same."

It was admitted, on the part of the defendant, that the three persons last named were drafted from the town of Chelsea, at the same time that the plaintiff was drafted, and that the said Packer, Conant, and Reed were mustered into the service, and were accepted, and actually entered into the service of the United States, and the plaintiff claimed that this last vote was a ratification, on the part of the town, of the vote of July 25, 1863.

It appeared that the plaintiff procured a substitute, and paid therefor the sum of $335.00, relying upon the said vote of the town, of July 25, 1863. The plaintiff was a resident of said town at the time of said vote, and at the time of said draft, and knew of said vote when he was drafted, and procured a substitute as aforesaid.

The only questions involved in the case, about which there was any dispute, were whether the vote of the town of July 25, 1863, was a valid and binding vote upon the town, and whether the said vote of March 1, 1864, amounted to a ratification of said vote of July 25, 1863.

The court did not regard the vote of March 1, 1864, as amounting to a ratification of the vote of July 25, 1863, but did decide that, by the existing laws at the time of passing the last named vote, the town had authority to pass said vote, and when passed, the town was bound by said vote, and the court rendered judgment for the plaintiff to recover the sum of three hundred dollars, and the interest on the same, to which the defendants excepted.

*Hebards,* for the defendants.

*Dickey & Gambell* and *C. W. Clarke,* for the plaintiff.

The opinion of the court was delivered by

WILSON, J. The town of Chelsea, on the 25th day of July, 1863, voted to pay to each man, or his legal representative, who should be drafted from the defendant town, to fill its quota under the then present call, and be accepted and actually join the army of the United States, in person, or by a legal substitute, the sum of three hundred dollars. The plaintiff was drafted from said town in August, 1863. He had knowledge of said vote, and relying upon it, he procured a substitute, who was mustered into the army of the United States, for which he was paid $335.00, by the plaintiff. The general question for adjudication is, whether by the existing laws at the time of passing said vote, the defendant had authority to pass it. It is claimed by the plaintiff that the provisions of section 95, chapter 15 of the General Statutes, are sufficiently general and comprehensive to authorize said vote. That section provides that, " Any town, at a town meeting legally warned and held, may grant and vote such sums of money as they shall judge necessary for the maintenance and support of the poor ; for laying out and repairing highways ; for building and repairing bridges ; for the prosecution and defence of their com-

mon rights and interests, and for all other necessary and inciden-
tal charges within said town." By this statute, towns have power
to grant and vote taxes for objects within their duty and jurisdic-
tion as municipal corporations. It has been decided that the con-
cluding provisions of that section, "*for the prosecution and defence
of their common rights and interests, and for all other necessary
and incidental charges within said town*," are not limited to ob-
jects specially mentioned in the preceding part of that section, but
extend to and embrace that large class of miscellaneous subjects,
affecting the accommodation and convenience of the inhabitants,
which have been placed under the municipal jurisdiction of towns
by statute or by usage. 27 Vt., 70. All this was evidently in-
tended by the legislature, and necessary for the existence and gov-
ernment of towns as such corporations. The provisions of that
section have been the law of the State ever since about the com-
mencement of the state government, as indicating the purposes
for which towns have been authorized to grant and vote money.
When the object of a tax is within the duty and jurisdiction of
towns as municipal corporations, they may exercise such powers
as will enable them fully to discharge their respective duties.
But that statute does not give jurisdiction to a town to grant
money for the purpose mentioned in the defendant's vote, July
25th, 1863, consequently the plaintiff can not recover under it.
There is nothing in the general words of that statute, nor was
there anything in the circumstances existing at the time its provis-
ions first became the law of the state, nor at the time of the re-
vision of our statutes in 1797, or in 1839, tending to show it to
have been the intention of the legislature to place under the muni-
cipal jurisdiction of towns the subject of granting and voting
money to be paid to soldiers from such towns, in the army of the
United States. The act of 1862, relating to volunteers, and the
act of 1863 relating to drafted men, are practical constructions by
the legislature of existing statutes relating to the general powers
of towns to impose taxes. To have voted money, before the pas-
sage of those acts, for the purpose therein mentioned, would have
been entirely foreign to the jurisdiction or duty of towns. The
act of 1863 was passed after the vote of the town under which

the plaintiff claims to have procured his substitute. Hence the question, whether the town had authority to pass that vote, depends upon the construction which is to be given to the act of 1862, (No. 38.) That act authorized " *towns to raise money to pay volunteers.*" In order to constitute a *volunteer* within the meaning of that act, he must have enlisted to enter the military service, and this signifies that his enlistment for such service was of his own free will. The plaintiff was not a volunteer. He did not enlist or offer to enter the service. He was, by a proceeding wholly adverse to his wishes, drawn or selected from the inhabitants of Chelsea, as liable to perform military service, and if he had entered the service under that call, he must have done so as a drafted man. It is said by the plaintiff's counsel that the act of 1862 was intended to embrace cases of this kind. But we think it clear that the case does not fall within the spirit of that act. The construction of a statute depends upon the apparent intention of the legislature, to be collected either from its particular provisions or the context. There is no equivocal expression in the statute under consideration. Its words admit only of one meaning, and this is supported by the general inferences to be drawn from the nature of the objects dealt with by the statute. Its leading objects were, to encourage military service by volunteers, and thereby render a draft unnecessary. This may be inferred in part from our statute granting state pay to volunteers. To this end, the general government offered and paid a large bounty for voluntary service, which drafted men were not entitled to receive. The provisions of the act of 1863 show that the legislature understood that towns, under the provisions of the act of 1862, could not vote money to be paid to drafted men. We hold that the town, at the time of passing the vote, July 25, 1863, had no authority to vote money to be paid to drafted men. It is claimed by the plaintiff, that the vote under which he acted was ratified by the vote of the town, March 1, 1864, but we do not so regard it. We think the plaintiff derived no authority from the town to furnish a substitute, or to pay him for entering the service. As the facts of this case are so essentially different from those of either of the cases cited by the plaintiff's counsel, we

10

have no occasion to discuss them here. The judgment of the county court is reversed, and judgment for the defendants to recover their costs.