## SHELDON & CUSHMAN

v.

## TOWN OF BENNINGTON.

MAY TERM, 1895.

*For what liabilities town may bind itself.    Interest in suit.*

1.  The officers of a town cannot bind it for the expense of carrying on a suit in the event of which it has no direct interest.

2.  A town has no such interest in a suit for divorce between husband and wife where the wife has lived for the last nine years with a daughter in Massachusetts and is still so living, although as a result of the suit the wife may possibly become chargeable to the town as a pauper.

Book account.    Heard upon the report of an auditor, at the December term, 1894, Bennington county, ROWELL, J., presiding.    Judgment for the plaintiffs.    The defendant excepts.

*C. H. Darling* for the defendant.

The town had no power to bind itself by the employment of the plaintiffs, and therefore that contract was void.    Dill, Mun. Cor., s. 147, 447; *Taft* v. *Pittsford,* 28 Vt. 286; *Johnson* v. *Colburn,* 36 Vt. 693; *Minot* v. *West Roxbury,* 112 Mass. 1; 17 Am. Rep. 52; *Daniel* v. *Memphis,* 11 Hump. 582; *Gregory* v. *Bridgeport,* 41 Conn. 76; 19 Am. Rep. 485.

A contract cannot be made by a municipality to meet a liability until that liability exists.    *Nashville* v. *Sutherland & Co.,* 92 Tenn., 335; 36 Am. St. Rep. 88; *Becker* v. *Keokuk Water Works,* 79 Ia., 419; 18 Am. St. Rep. 377; *Van Horn* v. *Des Moines,* 63 Ia. 447; 50 Am. Rep. 750; *Zottman* v. *San Francisco,* 20 Cal. 66; 81 Am. Dec. 96; *Bates* v. *Bassett,* 60 Vt. 536.

*O. M. Barber* for the plaintiffs.

The defendant was in danger of being compelled to support Mrs. Morse as a pauper, and was therefore interested in the event of the suit in which it employed the plaintiffs. *Van Sicklen et al.* v. *Burlington et al.,* 27 Vt. 70; R. L. s. 2751; *Willard* v. *Newburyport,* 12 Pick. 230; *Allen* v. *Taunton,* 19 Pick. 485; *Torrey* v. *Millbury,* 21 Pick. 64; *Spaulding* v. *Lowell,* 23 Pick. 71; *Hardy* v. *Waltham,* 3 Met. 163; *Bates* v. *Bassett,* 60 Vt. 535; *Bank of Columbia* v. *Patterson,* 7 Cranch 306; Abbott's Dig. Law of Corp., 242, and cases cited.

ROSS, C. J.    This is an action to recover for services rendered by the plaintiffs, as attorneys, in two suits between Lydia Morse and Luke Morse, one in favor of the former against the latter for support, reported in 65 Vt. 112; and the other in favor of the latter against the former for a divorce.    The contention is whether the town had such an interest in the prosecution of the first, or in the defence of the

last suit, that it can be made liable for the services of the plaintiffs therein, if authorized by the officers of the town.

It is evident that towns can contract debts only for those purposes for which they can assess taxes.   By R. L. 2751:

" Towns in town meeting may vote such sums of money as they judge necessary for the support of the poor ; for laying out and repairing highways ; for the prosecution of the common rights and interests of the inhabitants, and for other necessary incidental town expenses."

What expenses can be incurred "for the prosecution and defence of the common rights and interests of the inhabitants," was considered in *Hazen* v. *Strong*, 2 Vt. 427, in which it is held that a town, when its inhabitants are exposed to the spread of the smallpox among them, may prevent such spread by procuring those exposed to be inoculated for the kine pox.    In *Briggs* v. *Whipple*, 6 Vt. 95, it is held that a town may vote a tax to defend a suit in which it is pecuniarily interested, although not a party.    The overseers of the poor of the town were sued by some third parties, for some property which the overseers had received of a pauper and turned over to the town.    This was the suit which the town voted a tax to defend.    The right of the town to hold this property would be determined by the suit. In *Van Sicklen* v. *Burlington*, 27 Vt. 70, the town owned valuable property which was exposed to be burned by fire. It was allowed to incur expenses for establishing and maintaining fire companies properly equipped for extinguishing fires, both for the protection of the property of the town and for the protection of the property of the inhabitants of the town.    In each case the town and its inhabitants were directly interested in the object for which the expense was incurred.    By implication they hold that a town cannot incur expenses in defence of suits in which the town or its inhabitants are not directly interested.    This accords with the elementary text books on this subject.    Says Mr. Dillon in his work on municipal corporations, s. 147 (98) :

"Where a municipal corporation *has no interest in the event of a suit*, or in the question involved in the case, and the judgment therein can in no way affect the corporate rights or corporate property, it cannot assume the defence of the suit, or appropriate its money to pay a judgment therein; and warrants or orders for the payment of money based upon such a consideration are void."

As is tersely expressed in *Gregory* v. *City of Bridgeport*, 41 Conn. 76; 19 Am. R. 485, where a large number of cases are cited in support of it, "The want of interest involves the want of power." *Merrill* v. *Plainfield*, 45 N. H. 126.

If, therefore, the suit to be prosecuted or defended cannot affect the corporate rights or interests of the municipality, under the circumstances then existing, the municipality has no power to assume its prosecution or defense.    It is evident that its officers cannot bind a municipality to the payment for services to pay for which it could not legally assess taxes.    From the facts reported, and those found in the case reported in 65 Vt. 112, it appears that Lydia Morse, when these services were performed, was the wife of Luke Morse; that they were married in 1855 and lived together until 1883; that she had then become blind and deaf, and had been cared for by her daughter; that the daughter, having married, was about to remove to Massachusetts and Mrs. Morse insisted upon going with her against the objection of her husband, who had always suitably supported her and was willing to continue to do so, at his home; that she insisted upon going; whereupon he paid the daughter two hundred and thirty-five dollars and allowed her to take the most of the household furniture, and thereafter did nothing further for the support of his wife.    At this time they were living in Bennington.    When the suit was brought he was living in Bennington and his wife in Massachusetts, and they had been so living about nine years.    At various times, the daughter had written the town authorities that unless they did something for the moth-

er's support she should bring her back and throw her upon the town. She wrote the overseer of the defendant such a letter in 1892. The husband then had a petition pending for a divorce. The plaintiffs, under the direction of some of the town officers, brought a petition in favor of Lydia Morse, under Act 33 of 1890, to compel the husband to support her. In this suit, under the law, whatever orders the court might lawfully make on the husband in favor of the petitioner in regard to her support, could in no event inure directly to the control or benefit of the town; nor could any such order for alimony, in her favor, in the divorce suit. Lydia Morse had then, for about nine years, not been a resident nor inhabitant of the town of Bennington, but, during all that time, had resided in Massachusetts, where the town had and could have no control over her. The auditor has found that at the time these services were commenced, Lydia Morse was likely to become a public charge, either in Massachusetts or in defendant town, unless the husband, who resided in the defendant town, volunteered or could legally be compelled to support her; also, that defendant was then in jeopardy of having to support her. Both suits resulted in favor of the husband. Lydia Morse did not become a public charge upon the defendant. The contention is whether on these facts the defendant can be holden to pay for the plaintiffs' services. We think it can not. Mrs. Morse was not a public charge upon the defendant at the time they were performed. The town had and could have no control over her movements or support. No order or judgment in either suit could be rendered which would be directly for the interest of the town. The town then had no interest in Mrs. Morse, and owed her no duty which it needed to protect or discharge. It could have no such duty nor interest until she became its pauper—until it was charged with her support, and she was subject to its control. The possible contingency that might,

or might not, thereafter arise which would make it interested in her support, is too remote. The interest, to authorize expenditure at the expense of the taxpayers, must be immediate and direct. To hold that it might incur expenditure on such a contingency, would open the door too wide, and the taxpayers would never know for what legal expenditures they might be made liable. There is a possibility that any living non-resident person may become, at some time, in the near or more remote future, a resident pauper in a town. This possibility is more nearly probable in regard to some such non-residents than in regard to others. It does not appear that Mrs. Morse's last residence for three years was in the defendant town, nor that the daughter could bring her there, and throw her upon the town as a pauper, without incurring the penalty imposed by statute for bringing paupers into the state. She, therefore, on the facts found, stood in regard to becoming a pauper at the charge of the defendant like any other non-resident poor person, whom some one, at his peril, threatens to bring into the town. What might be the right of the town to take action against the person making the threat is not considered. In the case at bar, the officers and plaintiffs assumed that the daughter would carry her illegal threat into execution; that the town would be charged with Mrs. Morse's support, and undertook to forfend itself against such assumption by procuring, at the expense of the town, Mrs. Morse's support to be charged upon her husband, not in the name nor control of the town, but in her name, at her control. This it could not incur expenditure for.

*Judgment reversed and judgment for the defendant to recover its costs.*