# CHARLESTON

CHEESEBREW v. TOWN OF POINT PLEASANT.

Submitted March 7, 1911.  Decided October 29, 1912.

1.  MUNICIPAL CORPORATIONS—*Powers—Employment of Attorney.*
    A municipal corporation whose charter is silent in the premises has implied authority to employ an attorney to attend to its corporate interests, and to prosecute and defend actions in its behalf.  (p. 201).

2.  SAME.
    A municipal corporation may usually employ as many attorneys in a particular suit or matter as it may deem necessary to protect its interests, unless its charter forbids or the general scheme of its government so provides for a city attorney or other legal officer as to negative authority to employ others.  (p. 201).

3.  SAME.
    Where a town charter recognizes the right of the municipal authorities solely to license the sale of liquors, it is within the discretion of the authorities to inaugurate a policy of revenue and control thereunder and to deem the same of such importance to the town as to justify the expenditure of the public money in a legal defense of the right.  (p. 202).

4.  SAME.
    Municipal authorities may lawfully engage attorneys for the purpose of obtaining, in the court of last resort, a rehearing of a criminal case to which the town is not directly a party and a reversal of a decision therein which denies the existence of a material, corporate right of the town, when the decision if left unreversed will so operate as to prejudice materially the interests of the town.  (p. 202).

(WILLIAMS, JUDGE, dissenting).

Appeal from Circuit Court, Mason County.
Bill in equity by John H. Cheesebrew against the Town of

Point Pleasant and others.   From a decree for plaintiff, defendants appeal.

Reversed, injunction dissolved and bill dismissed.

B. H. Blagg and Sommerville & Sommerville, for appellants.
L. S. Echols, D. H. Peoples and Rankin Wiley, for appellee.

ROBINSON, JUDGE:

The council of the Town of Point Pleasant issued orders on the treasury of the town for the payment of fees to attorneys employed on behalf of the municipality in the case of State v. Harden, when that case was pending in this Court on rehearing. 62 W. Va. 313.   At the suit of a citizen and taxpayer, payment of the orders has been perpetually enjoined by a decree of the circuit court.   Accordingly, we have this appeal, bringing before us the question of the power of the town to contract for the payment of attorney fees in litigation as to which it is not a direct party.

The case in which the attorneys were employed by the town was a criminal prosecution against Harden for a sale of liquors without a state license.   It was conceded that Harden was guilty if the town did not have the sole and exclusive power to grant licenses to sell liquors.   He claimed that he was protected in the sale by a license granted by the town.   On the other hand, it was contended that the county court must authorize a sale of liquors in the town, and that Harden, having sold under no license granted by the county court, was not protected by the sole grant of license by the town.   So the only question involved in the case was whether the town or the county court could authorize the sale of liquors within the corporate limits. The ordinary result of a criminal prosecution—the punishment of an offender—seems not to have been the real end sought. Out of the case came a test of the right of the town exclusively to say that liquors might be sold within its limits.   The town authorities were in favor of the granting of licenses for the sale of liquors in the municipality.   For twenty-five years they had exclusively exercised the right to grant such licenses.   The county court, however, was opposed to licenses for the sale of liquors anywhere within the county.   Was its consent essential?

If so, that consent could not be obtained, and the revenue from liquor licenses, and other advantages claimed to accrue from a license system, would be taken from the town. Thus, the Harden case involved a question in which the town was materially interested—a question concerning its very corporate powers.

This Court at first decided that Harden was not protected by the grant of license by the town alone. Then it was that the council, conceiving the corporate rights of the town to be in grave jeopardy, employed the attorneys whose fees are involved in this injunction case to seek a rehearing and a reversal of the decision, so that there might be no final judicial precedent against power of the town exclusively to grant licenses. A rehearing was allowed and a reversal of the former decision obtained. The right of the town in the premises was vindicated.

Nowhere in the charter of the town of Point Pleasant is that municipal body directly authorized to employ an attorney, nor is authority in that particular given by any statute. But, notwithstanding the absence of direct grant of power in the premises, the town assuredly has that power as an incident to its very corporate existence and the many powers directly granted it by statute. "A municipal corporation has the implied authority to employ an attorney to attend to its corporate interests, and to defend and prosecute actions in its behalf." Tiedman on Municipal Corporations, sec. 176. Can it be maintained that such authority does not impliedly belong to a corporate body which may sue and be sued, contract and be contracted with, and which has many powers demanding the aid of an attorney in the exercise thereof, or the legality of which may be called into question in the courts? It would be most unreasonable to deny such incident power to a corporation having, by reason of its character, large interests demanding the services of those versed in the law. The power is indispensable to the proper exercise of the ordinary general powers of municipal bodies.

Since a municipal corporation has the power to employ attorneys in proper cases, it may usually employ as many for a particular matter as it deems necessary to protect its interests. Discretion in this particular must be conceded to it, unless

its charter forbids or the general scheme of its government
so provides for a city attorney or other legal officer as to nega-
tive authority to employ others. 2 Dillon on Municipal Corpo-
rations (5th ed.), sec. 824.

The town of Point Pleasant, by implied authority alone,
had selected and employed a city attorney. But by the same
implied authority it could employ other and additional counsel
in a proper case. Nothing in its charter or scheme of govern-
ment limited it to reliance on a single attorney. Since it had
power in the premises, it likewise had discretion in the exercise
of that power.

But the real question in the case before us is not whether
the town of Point Pleasant could employ the attorneys at all,
but whether it could employ them in the particular case for
which they were engaged and in which they rendered services.
It is insisted that since the Harden case was not a suit directly
against the town, the municipal officers had no authority to
expend money in regard to the case. It is certainly true that
the town could expend no money in defense of Harden—a pri-
vate individual  But the town cared nothing for Harden in-
dividually. It did care however for a legal question affecting
its corporate rights that was forever to be settled by the high-
est court of the State in the case pending against him. Indeed,
as we have shown, that question pertained directly to the town's
affairs. True, a decision of the question against the town,
in the Harden case, would not directly bind the town; but as
a high and final judicial precedent the adverse decision would
most effectually deny the power of the town exclusively to con-
trol the licensing of the sale of liquors. A final decision in
the Harden case meant that the town could or could not fur-
ther exercise a power and maintain a policy. It meant that
if Harden was convicted no one would thereafter dare sell
liquors under license solely by the town. It certainly meant
an annihilation of a municipal policy of revenue and control
which in the judgment of the town authorities was important
to the welfare of the municipality. Decision in the Harden
case would practically be as effectual as would a direct injunc-
tion against the town itself, forbidding the granting of liquor
licenses. If the question was finally settled against the town

in the Harden case, a judicial precedent would be established that would at once cut off licensed liquor business in the municipality. It would at least leave the control of the question of license or no license in the hands of outside authority, which at the time was opposed to the policy of the town in that regard, and which at any time might not be mindful of such policy as the corporate authorities deemed good. Though not directly a party to the case in which the question was involved and about to become finally determined, could not the town employ attorneys to defend its interests necessarily involved therein? Was not the town so affected by the situation in the Harden case as to warrant expenditure for a rehearing therein, if the corporate officers, representing the people of the municipality, in good faith thought it necessary for the public good?

Bad faith on the part of the authorities of the town in the making of the contracts for attorney fees does not appear. It seems that they acted in the best of faith for what they believed to be the best interests of the town. All persons may not concede that a right to license the sale of liquors is worth defending; but if the town had that right, the corporate authorities could surely defend it. As long as the people through their legislature deem such rights worth recognition in charters and laws, officers are certainly warranted in defending them and courts justified in enforcing them. When a town charter recognizes the right to license the sale of liquors, it is certainly within the discretion of the town authorities to inaugurate a policy of revenue and control thereunder and to deem the same valuable and important to the town.

We are of opinion that the town council had the power and the discretion to employ the attorneys. Indeed, from the viewpoint of those who maintain that a license system is good for a town, it was a sensible and business-like thing to do. We are not here concerned with the question as to whether license is good or bad policy. It was clearly within the discretion of the authorities representing the town of Point Pleasant to say that it was a needful policy. We must say, theoretically at the least, that they reflected the sentiment of the people they represented. Believing the policy to be needful, they could expend the money of the people for a defense of the right by

which that policy might be exercised. The maintenance of the right meant a large source of revenue to the town. It also meant, in the judgment of the authorities, a control of liquor sales, promotive of order. These matters of revenue and control, in their judgment, were material rights of the town. In litigation actually affecting these rights, they could employ such attorneys as they believed the case required.

If we had the converse of the case the same principles would apply. Suppose a construction of the town charter in the Harden case had been one practically compelling the town to grant liquor licenses, and the town authorities had deemed such construction erroneous and detrimental to the good order of the town. Would any one say that the authorities could not promote what they believed to be for the public welfare by expending money in testing the soundness of the judicial precedent that would thrust upon them a license system that they deemed unwarranted by the law and detrimental to the public?

The fact that the town was not a direct party to the Harden case, can not be a substantial reason against the right to employ attorneys for a rehearing in it, since material rights of the town were to be actually affected by an adverse decision in that case. It was deemed to the best interests of the town that the Harden case be determined rightly. Those interests were about to be denied and lost by a decision therein believed to be erroneous. A corporate right of the town—one given by the Legislature—was about to be struck down by a judicial determination that would be final and that would effectually deny further exercise of the right. Certainly the town was warranted in defending that right, and the interests which it conserved, in any case the result of which would so vitally affect the right. That the town defended through appearance for Harden does not matter. It was not litigating for Harden; it was fighting for its own rights and interests. The mere matter of procedure can not in reason be the test of the power and discretion of the town to employ counsel; the real test must relate to the effect of the determination of the case on the rights and interests of the town. We must look to substance and not to shadow. The form of the suit is immaterial. *Briggs* v. *Whipple*, 6 Vt. 95; *County of Franklin* v. *Layman*, 145 Ill.

138; *City National Bank* v. *Presidio County,* (Tex.), 26 S. W. 775.

Of course we do not hold that municipal authorities may engage attorneys for any and every case between other parties in which the corporate powers may come in question. But they may certainly do so in a case of that character when the issue has assumed such shape that a decision of the court of last resort is about to be made vitally affecting the town. They may assuredly do so when the court of last resort in a case between other parties has denied the existence of a material corporate right, which judicial holding will effectually operate to the prejudice of the town if not reversed by a rehearing—the only remedy left to prevent its binding force and disadvantageous operation.

The decree of the circuit court perpetuating the injunction is erroneous. It will be reversed, the injunction dissolved, and the bill dismissed.

*Reversed, injunction dissolved and bill dismissed.*

WILLIAMS, JUDGE, *(dissenting):*

I agree that the charter of a municipality, which gives it the right to sue and be sued, to contract and be contracted with, by necessary implication also confers power to employ counsel and to provide for their compensation; but such implied power must be limited to the cases in which the town's rights is directly involved. It does not confer the right to employ counsel in suits wherein the town is not a party and its interest only collateral and incidental. *Butler* v. *Milwaukee,* 15 Wis. 493; *Hight* v. *Monroe Co.,* 68 Ind. 575. Such implied power can be no more than is necessary to make effective the powers expressly granted; it must be restricted to cases wherein the town sues, or is sued; or, wherein its contracts, involving liability, are at stake. It must either be a party to the suit, or it must have some present pecuniary interest directly affected by the litigation; it must involve more than a mere right to be exercised at some future time.

The town of Point Pleasant was not pecuniarily interested in the result of Harden's trial. It had issued him a license to sell intoxicating liquors, and had received its license tax. It

did not guarantee the right, and was not bound to return the tax in the event the Court had held the license void. It was as much Harden's duty to interpret the town's charter as it was the duty of the town itself. He took whatever risk there was of a mistaken interpretation; and the courts never relieve against a mistake of law.

The courts are as much bound, being a co-ordinate branch of the government, to interpret correctly the charter privileges and powers of a municipality, when they are collaterally brought in question, as they are to interpret correctly the law relating to any other matter. Hence, viewing the municipality as a subdivision of the state government, its interests in securing a particular interpretation of its charter, is not distinct from the interest which the court itself would have in giving that interpretation. They are both instruments of government. A municipal charter confers governmental, not private, rights; and the legislature may grant to, or withhold from, municipalities, privileges and powers, at its pleasure; and the courts must construe the law so as to carry out the legislative will. Therefore, a municipality has no more implied power to employ counsel to engage in a suit, to which it is not a party, for the purpose of securing a particular construction of its charter, than it has to employ counsel to attend a session of the legislature, for the purpose of securing the passage of an act amending its charter; and no one, I think, would contend that such power as that is given by implication.