ENOS PUTMAN ET. AL. v. TOWNSHIP OF FIFE LAKE.

*Suit by township treasurer for unpaid tax—Certificate to tax-roll, etc.—Taxation of business stock.*

Debt or *indebitatus assumpsit* is the proper form of the action which a township treasurer may bring in the name of the township, for the amount of taxes assessed against an individual: the counts of the declaration should briefly explain the subject matter of the debt, though a special declaration is not needed.  By GRAVES, J.

Comp. L. § 1016 provides that where a personal tax is returned for nonpayment, the township treasurer may sue for it, and proof of the tax-roll and warrant shall *prima facie* attest the legality of the assess-

ment. *Held,* that a certificate that " the foregoing is a true transcript of the tax-roll * * and the warrant thereto attached," did not cover a return endorsed upon the transcript, and that the whole document should have been excluded on objection if the offer was made as a unit and embraced the tax-roll, warrant and return together. By GRAVES, J.

A township treasurer cannot sue for the amount of a tax after his war-warrant for collecting it has expired, and his warrant cannot be extended beyond the next annual session of the board of supervisors. By GRAVES, J.

Where the stock of a firm of lumber dealers is sold at their general place of business, but is sawed and shipped elsewhere, it is taxable at the general place of business, and not in the township where it is manufactured.

Error to Kent.   Submitted Oct. 22.   Decided Jan. 5.

ASSUMPSIT.   Defendants bring error.   Reversed.

*Simonds & Fletcher* and *M. J. Smiley* for plaintiffs in error.   The tax-roll is a sufficient warrant for the collection of a tax: *Staley v. Columbus* 36 Mich. 38 ; *McCallum v. Bethany* 42 Mich. 457 ; the personal property of a firm is taxed at their actual place of business, and not where it may incidentally be stored : *Peabody v. County Commissioners* 10 Gray 97 ; *Palmer v. Kelleher* 111 Mass. 320 ; *Campbell v. Machias* 33 Me. 419 ; *Little v. Cambridge* 9 Cush. 298 ; *Lee v. Templeton* 6 Gray 579 ; *Loud v. Charlestown* 103 Mass. 278 ; *Huckins v. Boston* 4 Cush. 543.

*E. S. Eggleston & Wesley W. Hyde* for defendant in error.   The personal property of a firm should be taxed where it is stored and delivered to purchasers : *Gray v. Kettell* 12 Mass. 160 ; *Little v. Greenleaf* 7 Mass. 236.

GRAVES, J.   The township treasurer of Fife Lake brought this action to collect a tax assessed in 1876 on certain lumber owned by the firm of E. Putman & Company and manufactured in the township for them.   The firm was composed of the plaintiffs in error and they all resided in Grand Rapids.   The court below allowed the township to recover, and exceptions are urged.

*First.* It was objected that no evidence was admissible on the ground that the declaration was bad. In ruling against the objection the court committed no error.

The treasurer is allowed to sue in the name of the township and to "take all lawful ways and means provided by law for the collection of debts" (Comp. L. § 1014), and the theory of the proceeding is that an obligation is cast by statute on the party to pay a specific sum of money to the township officer, and that on the strength of this legal liability a proper action may be maintained. What is the proper action in the particular case? It is debt or *indebitatus assumpsit,* the count explaining briefly the subject-matter of the debt. A special declaration is not required; though one, if drawn according to the legal effect of the statutory provisions, might not be ruled out. Each count in this declaration is in substance an *indebitatus* count. There is some foreign matter which is merely surplusage. It should have been omitted. But the plaintiffs in error reserved objection until the case was before the jury; and were the defect more serious we should not be inclined to listen to the exceptions based upon them.

*Second.* The statute makes provision that when a tax having been assessed on personal property "shall be returned by any township treasurer for non-payment * * * it shall be lawful for such treasurer to sue, in the name of such township, the person or persons against whom such tax was assessed" (§ 1014), and that "the production of any tax-roll on the trial of any action * * * for a tax therein assessed may, upon proof that it is either the original tax-roll and warrant or a duly certified copy thereof, * * * be read and used in evidence; and, if it shall appear from said assessment roll that there is a tax therein assessed against the defendant * * * it shall be *prima facie* evidence of the legality and regularity of the assessment of the same; and the court before whom the cause may be pending shall proceed to render judgment against the defendant, unless he shall make it appear that he has paid such tax." § 1016.

Instead of offering in evidence the original roll, warrant

and return, the township produced what was claimed to be a copy of the same. The record states that the plaintiff offered in evidence what purported to be a certified copy of the assessment roll of Fife Lake for the year 1876, the tax-roll, the warrant of the supervisor to collect the same and the return of the township treasurer thereto. The offer was entire and embraced a copy of the roll, warrant and return as one piece of evidence, and was so understood evidently. No attempt was made to exhibit a copy of each proceeding separately.

The certificate relied on to show that the roll and warrant exhibited amounted to a " duly certified copy," was in these terms :

" COUNTY TREASURER'S OFFICE,
STATE OF MICHIGAN, GRAND TRAVERSE COUNTY.

" I, John T. Beadle, treasurer of said county, do hereby certify that the foregoing is a true transcript of the tax-roll of the township of Fife Lake for the year 1876, and the warrant thereto attached now on file in my office, and of the whole thereof, and that I have compared said transcript with said roll.

JOHN T. BEADLE, County Treasurer."

Preceding this original certificate of the county treasurer, and written on the paper containing the copy of the roll referred to, there appeared what purported to be a copy of the township treasurer's return to the roll. It was as follows :

" The following personal taxes are uncollected, and the persons against whose property the same were assessed had no personal property out of which I could collect the same :

Frank Johnson,    . . . . .    $5.06, nothing to levy on.
Erastus Cornell, . . . . . .      1.07,      "      "      "
Putman & Co,    . . . . .   265.52, lumber.
                        _____
                        $271.65

Overseer sued for highway tax of Putman & Co., and prosecuting attorney refused to take the case in court.

C. C. BAILEY, Township Treasurer."

There was evidence that the paper to verify the copy of the roll and warrant, was itself genuine.

In reply to this offer of the copy of the roll, warrant and return the defendant's counsel made objection: *First*, that the county treasurer's certificate of the correctness of the copies was not sufficient, for the reason that it did not show that he compared the original warrant with the copy, and further because it did not refer at all to the township treasurer's return; *second*, that if what was offered as a certified copy of return by the township treasurer was well shown to be a true copy by the certificate of the county treasurer, still the return itself was not good as a legal preliminary to a suit for the tax, (1), because it bore no date and afforded no evidence that the act was in due time for the purpose of founding an action; and (2), because it did not show that the parties sued had no property out of which the tax could have been collected. The objections were set aside and the offer sustained.

It is now contended that by the form given to the objections they did not apply to the township treasurer's return, but only to the roll, and to that on the ground that the attesting certificate made no reference to it, and it is said that this objection was not a good one to the roll and warrant, because they were admissible whether a return by the township treasurer was indorsed or not.

This is not a correct view of the proceedings. As before intimated the offer of evidence was a unit. It tendered what was written as a document duly certified to be a true copy of an original in the office of the county treasurer and comprising a roll, warrant and township treasurer's return, and the general objection went to the whole offer, and in support of it certain grounds were specified. One was that the paper included in the offer as a copy of the township treasurer's return was not accredited at all. The court overruled the objection and sustained the entire offer. There seems to have been no misunderstanding. The counsel for the township might have changed the offer and reduced it to one only covering the roll and warrant. But it was not done. Under the course which was pursued it was the duty of the court to reject the whole offer if any of the included matters were at

the same time inadmissible under a proper objection and were so objected to.

The ruling is again defended on the claim that the effect of the county treasurer's certificate was to duly certify the township treasurer's return. The substance of the statement is that in contemplation of the provisions for collecting taxes by actions at law the return of the township treasurer is an integral part of the roll and warrant; and that where the county treasurer's certificate, without mentioning such return, sufficiently verifies certain copies of the roll and warrant as true, it thereby operates to verify as true a writing on the roll which purports to be a copy of the township treasurer's original return.

This position is not assented to. The statutes referred to do not regard the roll, warrant and return as consolidated into one document for the purpose of suits for taxes. They are spoken of as distinct legal entities. They arise in different ways and emanate from different sources. The return is referred to as a condition precedent to the right to sue for the tax. § 1014. It is expressly named and the provision that a duly certified copy of the roll and warrant may be read and used in evidence does not suggest that the return is considered merged and open to proof by copy under a certificate which in terms only attests that the copies of the roll and warrant are true ones.

Assuming but not deciding that the township treasurer's return may be satisfactorily proved in such a case by means of a copy certified as correct by the county treasurer, yet the fact that the copy tendered is actually so certified ought not to be left equivocal. However reasonable and convenient it may be to prove such documents by copies satisfactorily verified as correct, it is neither safe nor agreeable to law to consider the verifying certificate as applying to substantive and distinct doings that are not clearly enough within its apparent bearing to fairly exclude uncertainty. In sustaining the offer in question the court erred.

The objections to the substance of the return itself require no special attention. It is not certain that evidence might

not be adduced to fix the date of the return with legal accuracy if any occasion for it should appear, and it is not to be assumed that inability to collect the tax under the supervisor's warrant during the time allowed before action could not be well shown.

*Third.* The tax roll on being delivered to the township treasurer for collection is accompanied by the supervisor's warrant returnable on the first day of February. This warrant bears some analogy to an execution, and the power of the township treasurer to collect the taxes is confined to such time as the warrant is allowed to run.

The board of supervisors may prolong the time originally given by an extension of two months, and in case of neglect by the board to grant such extension any township board or common council of a city in the county may extend the time for collection for one month. § 1004. This is the general regulation.

We may next notice provisions for special cases. Whenever the treasurer "shall not *be able to collect* any tax on personal property on account of the absence of the person so taxed, or for any other cause, the county treasurer, if required, shall issue a new *warrant* to the treasurer of the township *for such tax*, and it shall be the duty of the township treasurer to renew his official bond; and thereupon the said warrant shall be and remain in force, for the purposes of *such collection*, until the next annual meeting of the board of supervisors, unless the tax is *sooner collected;* and the said township treasurer shall charge fifteen per cent. *interest on all such taxes, from the first day of February until the day of collection:* provided, said bond shall not be renewed unless the tax uncollected shall exceed five dollars." § 1013.

The next section provides that in case a tax assessed on personal property shall be returned by a township treasurer for non-payment, it shall be lawful for him to sue in the township name the person or persons against whom the tax was assessed, " and to have, use, and take all lawful ways and means provided by law for the collection of debts, to *enforce the payment of any such tax.*"

When the various provisions are compared and the scheme is understood it will be seen that the power of the township treasurer to take steps to gather or collect taxes is limited. His authority ceases at the expiration of the first warrant, whether that be on the first of February or one or two months later in virtue of an extension, unless indeed he is within § 1013 and has not been able to collect some tax on personal property and obtains a new warrant therefor, and, if the amount exceeds $5, renews his official bond; in which case he becomes empowered to enforce payment of the delinquent tax.  Unless his authority is kept alive or renewed by a new warrant as provided in this section, the circumstance that he is township treasurer does not enable him to collect a tax after the expiration of the first warrant.

If without a warrant he is without the requisite legal commission to effect collection.  He is in no better plight than a constable without process.  His power as a collecting officer is at end.  He can neither collect by making a distress nor by bringing an action.  The law foresees that the tax left uncollected may be a large sum and it does not leave the treasurer to act on his own responsibility.  It deems it necessary for the public safety to keep a check on his power in the matter of collecting, and to exact suitable security for the tax when collected.  Hence the arrangement for a new warrant and new security.  That the method is by action and not by distress makes no difference.  The township is put to more risk where the treasurer proceeds by action than where he proceeds by distress, and the person assessed incurs the chance of much more expense, and if collection is effected the need of security is the same.

The conclusion is that the treasurer in this case had no authority to put the court in motion and institute this suit.

There was no showing of a new warrant.  Moreover the tax was assessed in 1876 and the action was only commenced in August, 1879.  The law gives no power to prolong the township treasurer's authority to collect a tax assessed on personal property beyond the annual session of the board of supervisors for the year next succeeding that in which the

tax is assessed. Hence the treasurer of Fife Lake in 1879 could not have had any authority to sue for this tax which was assessed three years before. The rule of evidence in § 1016 has no bearing on this question. That relates to "the legality and regularity of the assessment," and not to the competency of a township treasurer to sue for a tax at any distance of time subsequent to its assessment. The plaintiff in error requested the court to instruct the jury that under the testimony the township was not authorized to bring the suit, and could not recover. The request should have been given.

*Fourth.* The evidence was uncontradicted that the plaintiffs in error were residents of Grand Rapids in May, 1876. The lumber on which the tax in question was imposed was at Fife Lake, and it should have been assessed at Grand Rapids and not elsewhere unless the circumstances presented a case, under §§ 974 and 978, or under one of them, for its assessment at Fife Lake. The former section provides that "all goods, wares and merchandise, or stock in trade, including stock employed in the business of the mechanic arts, in any township other than where the owners reside, shall be taxed in the township where the same may be, if the owners hire or occupy a store, mill, shop or warehouse therein, and shall not be taxable where the owners reside." Subdivision 1. Section 978 reads as follows: "Partners in mercantile or other business, whether residing in the same or different townships, may be jointly taxed under the partnership name, in the township where their business is carried on, for all the personal property employed in such business; and, if they have places of business in two or more townships, they shall be taxed in those townships for the proportion of property employed in such townships respectively; and, in case of being so jointly taxed, each partner shall be liable for the whole tax."

The judge in charging the jury assumed that there was evidence they might consider that the plaintiff in error on the second Monday of May, 1876, had a place of business within the meaning of these provisions, at a mill yard at Fife Lake where the lumber was, and this is alleged as error. The

point is well taken. The evidence was that the plaintiff in error had a contract with certain mill owners at Fife Lake to saw lumber for them and that they generally kept a man there to attend to piling the lumber and to see to its shipment as directed by the owners at Grand Rapids, and that this man, on one or two occasions and without any authority, sold a few feet at the yard. It further appeared that the quantity cut was very large and that pursuant to orders and directions forwarded by plaintiffs in error from their place of business at Grand Rapids it was shipped from time to time to Southern Michigan and to several states south and east. The bias of the evidence could not be mistaken. It had no tendency to make out the case required by the statute.

In making the property taxable away from the owner's residence, as belonging to an independent enterprise having a local center, the law refers to an actual business seat or establishment capable of being contemplated as a local concern possessing an identity of its own. It was not intended to include the numberless activities and operations constantly going on in all directions, and which lack this local, fixed and individual character. To have done so would have resulted in unparalleled confusion.

It is unnecessary to go further. The case might have been decided on a single point and in a few words. But as several questions were raised, not only novel but having a public bearing of some importance, the course usually pursued has been departed from, and questions not necessary to the disposition of the case have been dwelt upon.

Whatever fate may attend the suit hereafter, we can do nothing else than reverse the judgment with costs, and grant a new trial.

CAMPBELL, J. Without definitely expressing an opinion upon the other main questions in the cause, I am of opinion that upon the facts as shown the parties were not liable to taxation in the township where they were assessed.

MARSTON, C. J. and COOLEY, J. concurred.