## MORGAN CURTIS v. THE TOWNSHIP OF RICHLAND.

*Taxation of securities—Locality.*

The Tax Law of 1882 (How. Stat. p. 1267, sec. 1), declared that "all personal property, except as hereinafter provided, *shall* be assessed to the owner in the township of which he is an inhabitant," and farther, that "personal property under the control of a trustee or agent * * *may* be assessed to such trustee or agent, in the town where he resides." *Held*, that these provisions do not prevent securities belonging to a resident of the State, but in the custody of an agent living in a different town, and separately assessable, from being assessed in part to the owner and in part to the agent. If the same securities are assessed to both, the assessment on the owner takes precedence.

Error to Kalamazoo. (Mills, J.) Jan. 27–8.—April 29.

ASSUMPSIT. Defendant brings error. Reversed.

*Edwin M. Irish* for appellant.

*O. T. Tuthill* and *Henry F. Severens* for appellees.

COOLEY, C. J. The plaintiff brings suit to recover back taxes paid under protest in the township of Richland, in

which he resides. The taxes were laid upon an assessment of $25,000, upon choses in action to the value of near $35,000, which at the time were in the hands of agents at Petoskey, and, as he claims, assessed for taxation there. The assessment at Petoskey was but $5000, and that and the Richland assessment, when combined, were not excessive. But plaintiff claims that under the statute there was no right to tax him at all for these securities in Richland while they were held by his agents in Petoskey. The statute provides that "All personal property, except as hereinafter provided, shall be assessed to the owner in the township of which he is an inhabitant, on the second Monday of April of the year for which the assessment is made." Laws 1882, p. 9. One of the exceptions is the following : " Personal property under the control of a trustee or agent, whether a corporation or natural person, may be assessed to such trustee or agent in the town where he resides." The plaintiff contends that this exception applies to his case, and that his securities were properly taxable to his agents at Petoskey. That being so, he further contends that the assessment actually made, though so greatly below the value, would preclude an assessment to himself as owner at the place of his residence. The questions in the case, therefore, arise upon the construction of the statutory provision last above quoted.

One question is whether the provision was intended, under the term "personal property" here made use of, to include choses in action. Another is whether all the securities in question in this case can be regarded as having in fact been assessed to the agents. It will be observed that while the statute for the general rule prescribes that personal property *shall* be assessed to the owner where he resides, it uses the word "may" in providing for an assessment to a trustee or agent ; so that there would seem to be no illegality in assessing a part of the personalty in the hands of an agent to the owner himself, and another part to the agent, provided the property consists of distinct items capable of separate assessment, as was the case here. And as we must suppose the Petoskey assessor intended to perform his duty, we ought to

assume that he intended to assess a small part of the securities only ; not that he was lending himself to a scheme to enable the plaintiff to evade the law and escape his just share of the burdens of government.

Any such presumption, however, is supposed to be overcome in this case by evidence that the Petoskey assessor was in fact told about all the securities, and took them all into account in his assessment. But the evidence to that effect is of the most general and unsatisfactory character. There is no proof either that he had any list of the securities, or that he made any investigation to ascertain their value, or that in his own mind he placed any value on any one of them, or that in fact he did anything beyond assessing the agents $5000 in respect to personal property which they held for the plaintiff. The case, then, is this : that the agents, having possession of some $35,000 of personal property of the plaintiff, made up of many items which might be assessed separately, have been assessed in respect to them to the extent of $5000, and the court is asked to hold, on vague and general evidence, that the assessment covers all the items. Such a holding would assume official misbehavior on the part of the Petoskey assessor, and ought not to be had except upon very clear showing of facts requiring it. We have no such showing, and I think the supervisor of Richland was justified in assuming that only a part of the securities had been assessed, and the remainder left to his jurisdiction. This is at once more respectful to the Petoskey officer, and more just as between the plaintiff and the public, than would be the contrary assumption.

A question still remains whether, under a proper construction of the statute, the agents would be taxable at all on mere choses in action held for their principal. The statute makes a " trustee or agent " so taxable for " personal property " under his control. Choses in action are personal property ; but it is common in popular speech, as well as in statutes, to use the term " personal property " as applicable to tangible property only, and to speak of choses in action as a peculiar species of personal property constituting a class by itself.

Such might have been the sense in which the term "personal property" was made use of by the Legislature in this provision, and the fact that there can seldom, if ever, be any good reason why the owner, if a resident of the State, should not be personally assessed for his securities rather than his agent, would lend countenance to this view. But trustees frequently hold large properties in the form of securities, which are more properly taxable to them than to the beneficiaries of the trust; and if the word "trustee" is used here in its most ordinary sense, we must suppose that securities were in mind as part of the personal property that might rightfully be taxed to trustees and agents. But when we consider that a trustee proper is commonly the legal owner of the property he holds in trust, and therefore taxable as owner under the statutory provision first recited, we may well conclude that the word "trustee" is made use of in this place to cover the case of those fiduciary agencies which are in the nature of trusts, but where the legal title remains in the beneficiary. Used in this sense, it would not throw much light on the question of construction.

If it is competent under the statute to tax the agent upon securities temporarily controlled by him, to the exclusion of taxation of his principal, some very strange and very undesirable consequences may follow. It will then be entirely in the power of the owner of securities to deprive the place of his residence of all benefit of taxes in respect to them, and to select, at discretion, the place in the State where he will consent that taxes may be imposed. A selection will naturally be made from a regard to his own interest; and the owner of securities may do what will be equivalent to putting the privilege of taxing him up for lowest bid, and that municipality will obtain them whose assessor will go furthest in the disregard of law and of his official oath. If one officer will assess at one-seventh the value, and another at one-tenth, the latter will of course be favored. But perhaps the owner of bonds and mortgages may do even better than be assessed even to the extent of a tenth; for as no supervisor can be expected to learn of every case in which securities from outside

are brought into his township and left under control of banks, or other agencies, the owner, by judicious selection of localities, may reasonably hope to escape being taxed at all. It is very certain, I think, that the statute was not meant to hold out so inviting an opportunity for evasion and fraud.

But, as is said above, if the statute intends that agents may be taxed upon securities controlled by them, it also permits the principals themselves to be; the taxation of agents being simply permitted, not required. It may well happen, therefore, in some cases, that both principal and agent will be assessed for the same property. When that is the case, one assessment should take precedence of the other; and it is very plain to my mind that the assessment which should control is the one made to the principal. This should be so not only because he is owner, but because the place of his residence is best entitled to the tax. There can be no precedence in point of time arising from the fact that one officer acted first; for all assessments are made for the same financial year, and for the most part are required to be completed at the same time. In any view I can take of the case, therefore, I think the Richland assessment was legal. The jury ought to have been instructed that the plaintiff could not recover.

A new trial is ordered.

CAMPBELL, J. concurred.

SHERWOOD, J. I am unable to agree with all that is said by my brother Champlin, or in the conclusion he has reached in this case, but fully concur in the opinion given by the Chief Justice. The plaintiff's property, which he claims was illegally assessed in Richland, consisted of notes, secured by mortgages to the value of over $32,000. These securities were left with his agents (his son and son-in-law), residing at Petoskey, to collect and re-loan for him. They were all the time under his control, and subject to the direction of the plaintiff. There was no danger of a double assessment of this property. The proper place for its assessment was at all times under the legal direction of the plaintiff. It depended entirely upon the location of his place of

residence. If, while in this State, it was in Richland, then the assessment should be there. If at Petoskey, the assessment should be there. If he resided out of the State, or his residence was unknown, it was then properly assessable where the agent in this State controlling it resided. Such I believe to be the proper construction of the law upon that subject, and under which, in all cases, assessments are required to be made.

Counsel for plaintiff rely upon the seventh paragraph of section 11 of the general tax law for an affirmance of the plaintiff's judgment. I do not think that paragraph was intended to apply to the class of property claimed in this record to have been wrongly assessed where the owner resides in this State, but to such property owned by non-residents, in the hands or under the control of agents or trustees here. It is claimed by counsel for plaintiff this construction of the statute cannot well be sustained because of the fourth paragraph of section 11, which treats exclusively of property here of non-resident owners. There would be much force in this suggestion if this kind of personal property was included in the language of the paragraph. I do not think, however, it was intended to cover choses in action. I am of opinion that the plaintiff's property in Richland included the notes in the hands of his agents at Petoskey, and were properly assessed where the plaintiff resided, and that the direction given to the jury by the circuit judge to the contrary was erroneous.

The judgment should therefore be reversed, and a new trial granted.

CHAMPLIN, J. The plaintiff resides in the township of Richland, Kalamazoo county, Michigan. He had as early as 1878 invested his money to the amount of about $35,000 upon notes secured by mortgages upon lands in several of the northern counties of the lower peninsula. In February of 1883 he placed notes to the above amount in the hands of Messrs. Curtis & Wylie, who were private bankers at Petoskey, as his agents to collect and invest the proceeds in his

name. No written power of attorney was executed to them to act in his behalf, and when notes were paid and mortgages were to be discharged the plaintiff was to execute the discharges, he retaining the mortgages in his own possession. The firm of Curtis & Wylie was composed of William Curtis, who is a son, and James R. Wylie, who is a son-in-law, of plaintiff. When the supervisor of the township of Richland made his assessment in 1883 he was informed by plaintiff that he did not expect to be assessed on personal property so high as he had been the year before, which was on a valuation of $30,000, for the reason that he had placed a large amount of his personal property, consisting of notes secured by mortgage, in the hands of Messrs. Curtis & Wylie, his agents at Petoskey, and he expected it would be assessed there; that he only had in the town of Richland $6200 of personal property, and that he owed about $4000; and that, deducting from the balance 30 per cent., it would leave but $1800 of personal property valuation upon which he should be assessed. The supervisor accordingly assessed his personal property at a valuation of $1800. When the board of review of the town met, it increased the valuation of the personal property of plaintiff to $50,000. He appeared before the board and objected to the assessment, stating that he had placed a large amount of notes in the hands of Curtis & Wylie, at Petoskey, but did not state the amount, and offered to be sworn in the matter. The board refused to swear him at that time, and adjourned the sitting of the board, and one of its members went to Petoskey and ascertained that Curtis & Wylie, as agents of Morgan Curtis, had been assessed upon the roll of Bear Creek township, in which Curtis & Wylie resided, for personal estate valued at $5000.

At the adjourned meeting of the board of the township of Richland, Mr. Curtis again appeared before them, and at his request was sworn, and stated that Messrs. Curtis & Wylie were his agents, and resided in Bear Creek township, and that in February preceding he sent to them notes to the amount of about $35,000, to be fully managed and controlled by them as such agents; that he had some $6200 or $6300

of personal property remaining in his hands at Richland; that he owed debts something like $4000; and that by making a rebate of some 30 per cent., would leave the amount at which he ought to be assessed in Richland $1800, as valued by the supervisor. He produced a certificate from the supervisor of Bear Creek, bearing date May 5, 1883, stating that William L. Curtis and James R. Wylie, residents of said township, had given in for taxation 164 notes, running to Morgan Curtis, of Richland, Michigan, principally secured by mortgages on lands in the county of Emmett, and other counties south as far as Kalkaska county, and which he had listed for taxation upon his assessment roll for said township for the year 1883, to said Curtis & Wylie, as agents for Morgan Curtis aforesaid. Also the certificate of said supervisor, dated the 18th day of May, 1883, that he had assessed all the real and personal property in his township liable to assessment, and that the roll contained a true statement of the aggregate valuation of the taxable personal estate of each and every person named in the roll, and that he had estimated the same at its true cash value according to his best information and belief. Also the certificate of the board of review of the township of Bear Creek, approving the assessment roll for 1883, which bore date May 29, 1883.

After a hearing in the matter, the board of review reduced the assessment to $25,800. Plaintiff paid taxes on $1800 assessment, and also paid under protest the taxes on the assessment of $24,000, amounting to $342, and $13.68 collection fees. This suit is brought to recover back the money paid under protest.

It appeared in evidence on the trial that Mr. Wylie or Mr. Curtis informed the supervisor of Bear Creek that they (Messrs. Curtis & Wylie) were agents of plaintiff, and requested that they be assessed in his township for the notes in their hands; that he did not see any of the notes in his certificate above referred to, and did not know the amount of any of the notes; that he did not know who drew up the certificate, but it was handed to him for his signature by Mr. Wylie about a week after he had made the assessment; that

he took their statement as to the value of the notes; that according to his information and belief $5000 was the full value of such notes and mortgages, and he assessed the same upon his roll at that amount. After the testimony was closed, the circuit judge took the case from the jury and directed a verdict for $366.93, being the amount of money paid under protest, with interest.

It is enacted by section 10 of the general tax law that all personal property, except as thereinafter provided, shall be assessed to the owner in the township of which he is an inhabitant, on the second Monday of April of the year for which the assessment is made. The excepted cases are embraced in section 11 as follows:

"*First.* All goods and chattels situate in some township other than where the owner resides shall be assessed in the town where situate, and not elsewhere, if the owner or person having control thereof, hires or occupies a store, mill, place for sale of property, shop, office, mine, farm, storage, manufactory or warehouse therein, for use in connection with such goods and chattels. *Second.* All animals kept throughout the year in some town other than where the owner resides, shall be assessed to such owner, or the person in possession, in the town where kept. *Third.* All shares in bank shall be assessed to their owners in the town where the bank is located: provided, that shares owned by a person residing within the county where the bank is located shall be assessed in the town where he resides. *Fourth.* Personal property of non-residents of the State shall be assessed to the owner, or to the person having control thereof, in the town where the same may be, except that where such property is in transit to some place within this State, it shall be assessed in such place. *Fifth.* The personal property of minors under guardianship shall be assessed to the guardian in the town where he resides, and the personal property of every other person under guardianship shall be assessed to the guardian in the town where the ward resides. *Sixth.* The personal property belonging to the estates of deceased persons, in the hands of executors or administrators, shall be assessed to them in the

town where the deceased last dwelt, until they shall give notice that the estate has been distributed to the parties interested. If such deceased was a non-resident of the State, such property shall be assessed in the town where situated, to such executors, administrators, or to the person in possession. *Seventh.* Personal property under the control of a trustee or agent, whether a corporation or natural person, may be assessed to such trustee or agent in the town where he resides. Personal property mortgaged or pledged shall be deemed the property of the person in possession thereof, and may be assessed to him."

The Tax Law of 1882 was intended by the Legislature to contain a system for the collection of revenue which should be harmonious in its several provisions, and which should distribute the burdens of taxation upon the objects upon which it should be laid, in an equal ratio based upon the true cash value thereof. Any construction of the law, therefore, which subjects property belonging to a person to double taxation must be inherently wrong, and where the law directs property to be assessed in a certain place, or to a certain person, it necessarily excludes and prohibits its taxation in another place, or to another person. The general rule laid down is that personal property *shall* be assessed *to the owner* in the township of which he is an inhabitant on the second Monday of April of the year for which the assessment is made. The excepted cases are given in section 11. Each of the subdivisions of this section, except the seventh, requires that the property specified *shall be* assessed according to the *situs*; but the seventh subdivision uses the words "may be assessed," etc. The word "may," in this subdivision, must be construed to read "shall," according to well-settled rules of construction. There can be no doubt that, in this exception made by the statute to the general rule, the Legislature meant to impose a positive and absolute duty, and not merely to give a discretionary power to assess the personal property under the control of trustees or agents in the town where such trustee or agent resides. To hold the statute directory, or permissive merely, exposes this class of property either to double taxation, or

else enables it to escape taxation altogether, without any method provided to determine where it should be assessed.

In harmony with this construction is section 12, which requires every person, on request of the supervisor, to make and deliver to him a detailed statement in writing of all his taxable property, whether owned by him or held for the use of another; and the statements are required to show whether such property is owned by the person making the statement, or held for the use of another, and if the latter, in what capacity it is held. It is also apparent that the property referred to in subdivision 7 is not intended to embrace any of the property mentioned in the preceding clauses of the section. It is a more serious question whether the property referred to is not trust property, in which the legal title is in the trustee. By comparing this section with the old tax law, which was repealed when this was enacted, we find that all of the first six clauses of section 11 were substantially embraced in that, and in addition thereto the following, which stand as clauses or subdivisions 5, 6 and 8, namely :

" *Fifth.* All personal property held in trust by any executor, administrator or trustee, the income of which is to be paid to any married woman or other person, shall be assessed to the person having possession or charge of such property, in the township of which he is an inhabitant, whether such married woman or other person reside within or without this State.   *Sixth.* Personal property placed in the hands of any corporation, as an accumulating fund for the future benefit of heirs or other persons, shall be assessed to the persons for whose benefit the same is accumulating, if within this State ; otherwise, to the person so placing it, or his executors or administrators, until a trustee shall be appointed to take charge of such property, or of the income thereof."
"*Eighth.* All property held by any religious society as a ministerial fund shall be assessed to the treasurer of such society; and if such property consists of real estate, it shall be taxed in the township where such property lies; if it consists of personal property, it shall be taxed in the township where such society usually holds meetings."   [Comp. L. § 974.]

The question therefore arises whether or not the seventh subdivision of the present statute was intended to cover these three subdivisions of the old statute in a condensed form. If it was, then the case at bar would not be governed by the seventh clause, and the property was not properly assessable to the agents at Bear Creek. The subdivisions of the old statute above cited all refer to cases of trusts, and there would be no difficulty in coming to the conclusion that the seventh subdivision of the new statute was only intended to cover like cases, were it not that the words " or agent" are contained in the new law. This is an important change, and adds a new representative character to be assessed, and was doubtless intended to embrace property other than that held in trust; namely, that which is under the control of an agent, who does not reside in the same town with the owner.

We are referred by counsel for plaintiff to the case of *People v. Smith* 88 N. Y. 576. But that was a case where the relator was assessed in New York state for personal property which he owned and which he had invested in other states, and was in the control of his agents there. It throws no light upon the question under consideration. If the statutes of New York and Michigan were substantially the same upon the subject of taxation, the case of *Boardman v. Supervisors of Tompkins Co.* 85 N. Y. 359, would be an authority in point. In that case Boardman had, as agent for his sisters, bonds and mortgages belonging to them to the amount of $12,500. He had procured them at their request, by means of their money as an investment, and they remained in his hands as their agent, and for their convenience. He held them subject to their order, and they had at all times exclusive control over—*first*, the money with which they were obtained; and *second*, the securities. He resided in Ithaca, Tompkins county, and they in Rochester, Monroe county, all in the state of New York. The assessors of the town of Ithaca were informed of these facts, and, disregarding his protest, made an assessment in these words: "Douglas Boardman, agent; personal property, $12,500." The tax was collected, and he applied to the court for an order to

have it refunded.    The law of that state provided " that all lands and all personal estate *within this state*, whether owned by individuals or by corporations, shall be liable to taxation, subject to the exemptions hereinafter specified."    Under this section, the courts of last resort in that state have uniformly held that property liable to taxation must have an actual situs within the state ; that the fiction of law that personal estate has no situs away from the person or residence of the owner, must yield to the fact of actual location, such being the intent of the taxing law.    The statute of that state also provides where personal property shall be assessed, as fol-·lows :

" Every person shall be assessed in the town or ward where he resides when the assessment is made, for all personal estate owned by him, including all personal estate in his possession or under his control as agent, trustee, guardian, executor or administrator, and in no case shall property so held under either of these trusts be assessed against any other person ;    *    *    *    but the products of any of the United States, consigned to agents in any town or ward of this state for sale on commission, for the benefit of the owner thereof, shall not be assessed to such agent, nor shall such agents of moneyed corporations or capitalists be liable to taxation under this section for moneys in their possession or under their control, transmitted to them for the purpose of investment or otherwise."

Based upon the language of the statute, the court held that the word " agent " was limited to the liability of non-residents of the state for property brought or sent into it. This word was introduced into the law by an amendment of their statute made in 1851.    Concerning the entire section and the amendment, the court, in *Hoyt v. Commissioners* 23 N. Y. 235, says :    " In that mode the estates of non-residents having a situs here were reached.    But it was at least doubtful whether the terms ' trustee,' ' guardian,' etc., were sufficiently descriptive to include property of non-residents situated here, under all conditions which ought to subject it to taxation. The more comprehensive word ' agent,' therefore, was

added." The court held in the *Boardman Case* that as the owners of the securities were residents of Monroe county, such securities could only be assessed to them at their place of residence, and could not be assessed and taxed in the hands of Boardman, their agent in Tompkins county.

It will be observed that the New York statute contained no other provision for taxing the personal estate of non-residents, and personal property in control of an agent was held, therefore, to refer to that class of property. Indeed, the law of that state was imperative that personal property should be assessed to the owner in the township or ward where he resides. Such, also, is our statute, except as specified in section 11: Subdivision 4 of this section expressly provides for the taxation of personal property of non-residents, and consequently the word "agent" in the seventh clause cannot refer to that class of property.

This marked difference in the statutes prevents us from following the authority of the *Boardman Case*. Giving to the language of that subdivision the ordinary import and meaning of the words used, it embraces the personal property controlled by Messrs. Curtis & Wylie as agents of the plaintiff, and it was rightly assessed in Bear Creek township, and could not be legally assessed in the township of Richland. No two supervisors have jurisdiction to assess the same property at the same time. It is claimed, however, that the township board of review of Richland had jurisdiction to assess plaintiff for personal property, and having passed upon the question of amount, their action is final. This would be so if it was simply a case of excessive taxation or overvaluation. *Williams v. City of Saginaw* 51 Mich. 120: But the facts of this case show that this is not a case of excessive valuation, but an attempt to assess plaintiff for personal property under control of his agents at Bear Creek, and over which subject they had no jurisdiction. Under such circumstances an action lies to recover the tax thus illegally assessed. *Putman v. Fife Lake* 45 Mich. 134; *McCoy v. Anderson* 47 Mich. 505; *Taylor v. Youngs* 48 Mich. 271;

*Torrent v. Yager* 52 Mich. 506 ; *Osterhout v. Jones* 54 Mich. 228.

The claim is made that if a recovery can be had, only the township taxes can be recovered in this action ; but we held otherwise in *Daniels v. Watertown* 55 Mich. 376.    There is no reason why the township should not be liable for the whole exaction where they have proceeded without jurisdiction to levy and assess taxes upon a person contrary to the statute.    It is said that the construction which I have placed upon the statute would enable persons liable to taxation to evade their share of the public  burden by placing their personal property of this character in  the hands of an agent in some town where the rate of  taxation is lower, or where the rate assessed by the supervisors is less, than it is in the town where the person resides. I do not suppose it is possible to prevent unscrupulous or designing men from evading their just share of taxation.    If assessed at the place of their residence, as contended for by my brethren, for this class of property, there is nothing to prevent a person from changing his residence from a town or ward where the rate is higher to a place where the rate is lower, and in this manner evade a higher rate.    I cannot believe that any danger would arise in the liability of taxing officers to disregard the law in order to induce the owner of personal securities to place them in the hands of agents in their towns.    The statute requires all property to be assessed at its true cash value, and it is to be presumed that all assessing officers will obey the law.

The language of the statute, requiring all personal property to be assessed to the owner in the township of which he is an inhabitant on the second Monday of April, certainly includes his choses in action.    In this we all agree.    In the section providing for exceptions to this rule I do not find that choses in action are excluded by any language in the law, or by any natural inference from the language used ; and I do not perceive how the rule and the exception can be made effective upon the same class of property at the same time.    If the Legislature had intended to have choses in action assessed to the owner in the town of which he is an

inhabitant, would they not, when enacting that personal property in the hands of an agent should be assessed to such agent, have excepted choses in action from the operation of the seventh subdivision?

For the reasons above given I cannot assent to the result reached by my brethren.