RICHARD RICHESON

*v.*

THE PEOPLE *ex rel.* William R. Jones.

*Filed at Mt. Vernon January 25, 1886.*

1. MUNICIPAL SUBSCRIPTION—*in aid of railroads—prior to the constitution of 1870—of a subscription with conditions—and of the power to agree to a change in such conditions after the adoption of the constitution.* Prior to the adoption of the constitution of 1870, the legislature had the power to authorize counties and other municipalities, by a vote of the people, to take stock in railroad companies, and to issue bonds for such stock, and levy and collect taxes to pay the same.

2. Under the laws as they existed prior to the adoption of the present constitution, the people, in voting for a proposition to take stock in a railroad

corporation, had a right to impose conditions upon which the subscription should be made, and the municipal authorities could exercise the power conferred by the vote according to such conditions, but in no other manner.

3. The constitution of 1870 prohibits municipal corporations from making subscriptions or donations to any railroad or private corporation except when authorized under prior laws by a vote of the people, and when so authorized the subscription must be in accordance with the conditions upon which it was voted. After the adoption of the constitution the conditions upon which such a subscription was voted can not be changed, and a subscription made upon other and different conditions.

4. Prior to the adoption of the constitution of 1870, a proposition to subscribe $100,000 to the stock of a railway company, upon condition that the company's road should be located through the county, and its construction commenced within nine months and completed by the first day of June, 1872, was submitted to a vote of the people of the county, and carried. In February, 1871, the county board, by an order, extended the time for commencing the work on the road to January 1, 1872, and its completion to January 1, 1874. On November 12, 1877, the county board made another order, under which the bonds were issued, but the work on the road was not commenced before January, 1877, and not completed before November 1, 1879: *Held,* that the county board had no authority to extend the time of commencing and completing the road, and that the bonds so issued upon the county's subscription were void, and a tax levied to pay interest on them illegal.

APPEAL from the County Court of Franklin county; the Hon. WILLIAM H. WILLIAMS, Judge, presiding.

Mr. THOS. J. LAYMAN, for the appellant:

At the time of the adoption of the present constitution there was no contract between the county and the railway company to be impaired, or any rights then vested in the company.

Where a statute gives a right in its nature not vested, but remaining executory, if it does not become executed before a repeal of the law, the right fails with the law. *Van Inwagen* v. *Chicago,* 61 Ill. 31; Dwarris on Statutes, 676; *Canal Co.* v. *Chicago,* 14 Ill. 334; *Aspinwall* v. *Davis County,* 22 How. 364; *Richardson* v. *Akin,* 87 Ill. 138; *State* v. *Saline County,* 45 Mo. 242.

The obligations entered into under existing laws, since the adoption of the new constitution, can not be enlarged or changed. *Middleport* v. *Life Ins. Co.* 82 Ill. 568; *People* v. *Jackson County,* 92 id. 451; *People* v. *Town of Waynesville,* 88 id. 469.

After July 2, 1872, neither the county nor any of its officers had any power to extend the time or change the condition upon which the subscription was authorized. *Middleport* v. *Life Ins. Co.* 82 Ill. 568, and cases cited above.

Counties have no general authority to execute bonds payable at a future day, and can only do so when authorized by positive law. *Barnes* v. *Town of Lacon,* 84 Ill. 461; *Hardin County* v. *McFarland,* 82 id. 138; *Law* v. *People,* 87 id. 385; *Whitewell* v. *Pulaski County,* 2 Dillon C. C. 249.

Neither the county nor its officers can create or contract any debt against the county unless expressly authorized to do so. *Cook County* v. *McCrea,* 93 Ill. 236; *Lippincott* v. *Town of Pana,* 92 id. 24.

If there was no law authorizing the issuing of bonds, then the vote upon the question was void, and could not confer the power. *Town of Oakland* v. *Skinner,* 4 Otto, 257.

Not only the power to subscribe for stock must be given the county by express legislation, but the power also to create indebtedness payable at some future day must be given in express terms by law, or the county can not exercise such power. *Gaddis* v. *Richland County,* 92 Ill. 119; *Hewitt* v. *Normal School District,* 94 id. 532; *Board of Supervisors* v. *Farwell,* 25 id. 181; *Wells* v. *Supervisors,* 12 Otto, 625; *Clark* v. *Hancock County,* 27 Ill. 305; *Marshall County* v. *Cook,* 38 id. 44; *Wiley* v. *Silliman,* 62 id. 170; *Hardin* v. *Railroad Co.* 65 id. 90; *McWharton* v. *People,* id. 290; *Town of Big Grove* v. *Willis,* id. 263.

It devolves on the People to show that the tax which is sought to be collected has the sanction of law to support it. Cooley's Const. Lim. 518; *English* v. *People,* 96 Ill. 569.

Mr. GEORGE HUNT, Attorney General, for the appellee:

The order of the board of supervisors that the county sub-
scribe, amounted to a subscription in fact.     *Moultrie County*
v. *Savings Bank,* 92 U. S. 631; *Fund Society* v. *City of Phila-
delphia,* 31 Pa. 174; *Sacramento* v. *Kirk,* 7 Cal. 419; *Clark
County* v. *Turnpike Co.* 11 B. Mon. 143; *Nugent* v. *Putnam
County,* 19 Wall. 241; *Logansport* v. *Blakeman,* 17 Ind. 318.

The condition that the road should be commenced and
completed by certain days, was one which the county might
waive.     It was not such a condition as affected the original
power to make the subscription.     The time within which the
road should be finished could not affect the validity of all the
bonds.     (*Randolph County* v. *Post,* 93 Ill. 502.)     In this case
the court say:     "We should unreasonably restrict the rights
and powers of a municipal corporation were we to hold that
it did not possess the power to alter its legally made contract,
by waiving conditions found to be injurious to its interests,
or that it could not estop itself like other parties to a con-
tract."     Bigelow on Estoppel, 464; 1 Dillon on Mun. Corp.
secs. 275, 383, 385, 398; *Moran* v. *Corwin,* 2 Black. 722;
*Zabriskie* v. *Cleveland,* 23 How. 400; *Pendleton* v. *Avery,* 23
Wall. 297.


Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an application by the collector of Franklin county,
at the May term, 1885, of the county court, for judgment for
taxes against delinquent lands for the year 1884, and for back
taxes for prior years.     On the day application was made for
judgment, Richard Richeson appeared and filed objections in
writing to the rendition of a judgment against lands owned
by him, for taxes levied to pay interest on bonds issued by
the county to the Belleville and Eldorado Railroad Company,
under an act approved February 22, 1861, entitled "An act to
incorporate the Belleville and Eldorado Railroad Company."

The objections were overruled, and judgment rendered for the amount of taxes assessed against the lands to pay interest on one hundred bonds which had been issued by the county. To reverse the judgment of the county court, Richeson appealed.

It appeared from the evidence introduced on the hearing, that on the 24th day of July, 1869, the county court of Franklin county entered of record the following order:

"*Be it ordered by the court,* that by authority of an act of the General Assembly of the State of Illinois, entitled 'An act to incorporate the Belleville and Eldorado Railroad Company,' approved February 22, A. D. 1861, and an act of the General Assembly approved November 6, A. D. 1849, authorizing counties to take stock in railroad companies, notice is hereby given, that on Saturday, the 11th day of September, A. D. 1869, in the various precincts in the county of Franklin, and State of Illinois, at the usual voting places, an election will be held upon the question whether or not the county of Franklin shall subscribe the sum of $200,000 to the capital stock of the Belleville and Eldorado Railroad Company, payable in county bonds at par, due in twenty years from date, with interest payable semi-annually, at the rate of eight per cent per annum, and to be of the denomination of not less than $1000 each, said bonds to be issued upon the following conditions, and not until they are complied with:"

The first condition required the railroad to be located through Franklin county, in a certain specified line. The second condition was as follows: "That said railroad shall be commenced in the county of Franklin within nine months from the date of said election, and completed through the county by the 1st day of June, A. D. 1872." There were other conditions upon which the vote was taken, but it will not be necessary to refer to them here.

On the 6th day of November, 1869, the county court again convened, and entered an order reciting the order of July 24,

1869, and then declared that a majority of the voters of the county, at the election held on the 11th day of September, did vote in favor of the proposition to subscribe $200,000 to the capital stock of said railroad company. The order then proceeds:

"It is ordered by the court, that by authority of the vote at the election aforesaid, held in the county of Franklin on the 11th day of September, A. D. 1869, and by authority of an act of the General Assembly of the State of Illinois entitled 'An act to incorporate the Belleville and Eldorado Railroad Company,' approved February 22, A. D. 1861, and an act of the said General Assembly approved November 6, A. D. 1849, authorizing counties to take stock in railroad companies; that the county of Franklin, in the State of Illinois, does hereby subscribe to the capital stock of the Belleville and Eldorado Railroad Company the sum of $100,000 by virtue of the said act of the General Assembly of the State of Illinois entitled 'An act to incorporate the Belleville and Eldorado Railroad Company,' approved February 22, 1861, and the further sum of $100,000 by virtue of an act of the said General Assembly approved November 6, A. D. 1849, authorizing counties to take stock in railroad companies, making a total of $200,000 hereby subscribed to the capital stock of the said Belleville and Eldorado Railroad Company; that said capital stock subscribed as aforesaid be payable in the bonds of the county of Franklin at par, said bonds to be due in twenty years from the date thereof, and to draw interest, payable semi-annually, at the rate of eight per cent per annum,—said bonds to be of the denomination of not less than $1000 each. It is further ordered and considered by the court, that said bonds are to be issued upon the following conditions, and never until they are complied with,—that is to say:"

Then follow all the conditions embraced in the order of submission, including condition No. 2 above.

No other action was taken by the county of Franklin in regard to the subscription until February 6, 1871, when the county court, after reciting that the time for beginning the construction of the road had expired, ordered "that the time for commencing and completing said railroad be extended, and that the said subscription be made on the stock books of the Belleville and Eldorado Railroad Company upon the following terms and conditions, and not until they are fully complied with, to-wit: * * * The said railroad shall be commenced in the county of Franklin on or before the 1st day of January, A. D. 1872, and completed through the county by the 1st day of January, 1874; that $100,000 of said bonds payable on said stock shall be delivered to said company when said railroad is in running order, and the necessary cars, propelled by steam, running thereon from DuQuoin or Eldorado to Benton, as aforesaid, and a station located at Benton, and .$100,000 of said bonds to be so delivered when the said railroad is completed and in running order, and the necessary rolling stock thereon through said Franklin county." Other orders were made from time to time in regard to the subscription, after the last named order, but they have no special bearing on the case.

In the meantime the county adopted township organization, and on the 13th day of December, 1876, the board of supervisors passed a resolution, by the terms of which the county subscribed $150,000 to the capital stock of the railroad company,—$75,000 under the act of 1861, and $75,000 under the act of 1849. The order required bonds of the county to be issued and placed in the hands of a trustee. The order also provided that the building of the road should be commenced in thirty days, and completed by October 15, 1877. On the 12th day of November, 1877, the board of supervisors made another order amending the last named order, so that the subscription of the county should be $100,000 under the act of 1861, and $50,000 under the act of 1849. In pursuance

of these two orders last named, the bonds were issued on the 13th day of November, 1877,—one hundred of $1000 each, under act approved February 22, 1861, and fifty of $1000 each, under the act of November 6, 1849. It also appears from the evidence, that no work was done in grading or track laying on the line of the road in Franklin county prior to January, 1877, and it was also proven on the trial that the road was not completed through the county until November 1, 1879.

It will be observed that the tax for which judgment was rendered was levied for the purpose of paying interest on the one hundred bonds, which purport, on their face, to have been issued under an act entitled "An act to incorporate the Belleville and Eldorado Railroad Company," approved February 22, A. D. 1861; and when bonds are mentioned hereafter in. the opinion, these are the bonds referred to, as the other bonds issued under the act of 1849 are not involved, and their validity will not be considered.

As is well known, prior to the adoption of the constitution of 1870 the legislature had the power to authorize counties and other municipalities, by a vote of the people, to take stock in railroad companies, and to issue bonds for such stock, and levy and collect taxes in payment of such bonds; but that instrument prohibited counties, cities, towns, townships or other municipalities from becoming subscribers to the capital stock of any railroad or private corporation, or making donations to or loaning credit in aid of such corporation, with this exception: "*Provided, however,* that the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions where the same have been authorized under existing laws by a vote of the people of such municipality prior to such adoption." Here the subscription was not made, nor were the bonds issued, prior to the adoption of the foregoing provision of the constitution, and the question presented is, whether

the subscription and the bonds can be sustained under the
proviso cited above.

As before observed, the people of Franklin county did, on
the 11th day of September, 1869, vote in favor of subscribing
$100,000 stock in the Belleville and Eldorado Railroad Com-
pany, but the authority which the people conferred by the
vote, upon the county court, was upon certain conditions.
These conditions the people had the right to impose, and the
county authorities could exercise the power conferred accord-
ing to these conditions, but in no other manner. When the
constitution was adopted, the county of Franklin had the
right, under the vote which had been taken, to become a
stockholder in the railroad company in the sum of $100,000,
upon the condition that the railroad should be commenced in
the county of Franklin within nine months from September
11, 1869, and completed through the county by the 1st day of
June, 1872. This right to take stock was not destroyed or
abrogated by the constitution, but preserved by the proviso
heretofore cited ; but it is manifest that the county authorities
could only act as authorized by the vote of the people. The
vote, with the conditions upon which it was given, was the
charter of their authority. They possessed such power as had
been conferred by that vote, but no other. The object of the
people, in the adoption of the constitution, was to inaugurate
a new policy,—one which would absolutely prohibit munici-
palities in the future from involving the people of such cor-
porations in large debts incurred for the purpose of aiding in
the construction of railroads. But for the purpose of not
disturbing rights which may have been acquired, the proviso
was adopted, which continued the right to make a subscrip-
tion where the same had been authorized under existing laws
by a vote of the people,—in other words, where a vote had
been taken under a law authorizing it, and the subscription
had not for some cause been made, the municipal authorities
had the right; under the proviso, to proceed and carry out the

will of the voters as it had been expressed at the ballot-box. But this proviso could not authorize a subscription on any other or different terms or conditions than those specified in the vote.

The ruling in *Middleport* v. *Ætna Life Insurance Co.* 82 Ill. 562, is in point here. It is there said: "The obligations assumed under existing laws can not, since the adoption of the constitution, be enlarged or materially changed, either by the action of the people of the township or its corporate authorities. All power is taken away, and the utmost that can be done is to make and complete the subscription or donation previously voted under then existing laws, upon the same terms and conditions as voted. Subscriptions or donations on other terms would obviously require new consent on the part of the people of the municipality, which can not be had for want of power."

The county authorities of Franklin county did not observe the plain duty which had been imposed upon them, and make the subscription conditional, as they had been authorized to do by the vote of the people of the county at the election held on the 11th day of September, 1869, but in 1872 the county court undertook, by an order entered of record, to change and vary the conditions upon which a subscription might be made, and provide that the time for building the railroad through Franklin county might be extended. This the county had no authority to do. The vote of the people of the county, which alone authorized the subscription and the issue of the bonds, as was said before, required the railroad company, as a condition upon which the county should be bound, that the railroad should be completed through the county by the 1st day of June, 1872. When, therefore, the time for the completion of the road expired,—it not having been built through the county,—the authority of the county authorities to take stock terminated, and yet, as late as 1877,—five years after the authority to act had expired,—the subscription was made

and the bonds were issued, although at this time the railroad had not been built through the county. We are fully satisfied that the action of the board of supervisors in 1877, in issuing the bonds, was unauthorized, and that the bonds were issued without authority of law.

It may, however, be said that the bonds are now in the hands of innocent holders, and that the defence interposed can not be successfully made against them. At the time the vote was taken under which the bonds were issued, the act of April 16, 1869, was in force, the 17th section of which provides that any county shall have the right, upon making any subscription or donation to a railroad company, to prescribe the conditions upon which such bonds, subscription or donation may be made, and such bonds, subscription or donation shall not be valid and binding until such conditions precedent shall have been complied with. (Rev. Stat. 1874, p. 794.) This section of the act was before the court in *Town of Eagle* v. *Kohn*, 84 Ill. 292, and we there held that bonds in the hands of innocent purchasers were not valid where the conditions upon which the subscription was made have not been complied with. The language of the statute is plain and explicit, and unless it should be arbitrarily disregarded, we perceive no ground upon which an innocent holder can evade its provisions.

If we are correct in our conclusions, it follows that the tax levied to pay the interest on the bonds was illegal, and the county court erred in rendering judgment against appellant's lands for such tax.

The judgment of the county court will therefore be reversed, and the cause remanded for another trial in harmony with this opinion.

*Judgment reversed.*