THE COUNTY OF FRANKLIN

*v.*

THOMAS J. LAYMAN *et al.*

*Filed at Mt. Vernon, April 4, 1893.*

1. COUNTY—*may employ counsel to question the validity of its bonds—in a suit to which it is not a party.* A county board may lawfully employ counsel to test the validity of bonds issued by the county, and for this purpose may agree with counsel to test the validity of a tax levied to pay interest on such bonds, by aiding a tax-payer in resisting application for judgment against him for such tax. While the board may not employ counsel solely for the purpose of aiding a tax-payer in his private litigation, yet when the purpose of the litigation is to test the validity of the tax for the benefit of the public, it may employ counsel for that purpose, and it will be liable to pay for the legal services per-

formed by the attorneys at law so employed by it, although the county is not a formal party to the litigation.

2. A contract of a county board for the employment of counsel to resist an application for judgment against a single tax-payer for taxes assessed for the payment of county bonds illegally issued, for the purpose of testing their legality, is within the object and spirit of the statute authorizing county boards to take suitable measures for prosecuting or defending suits by or against their counties. That which is within the object, spirit and meaning of a statute, is as much within the statute as if it were within its letter.

3. COUNTY BOARD—*power to contract concerning county affairs—questioning the validity of county bonds.* A county board has, under the statute, power to make all contracts and do all other acts in relation to the property and concerns of the county, necessary to the exercise of its corporate powers; and under its general powers it may take such steps and perform such acts as may, in the exercise of its discretion, defeat the collection of a tax assessed to pay a debt illegally charged against the county.

4. It is not to be supposed that because the State auditor, under an act of the legislature, has levied a tax to pay bonds of the county, that the county board is thereby precluded from questioning the validity of such bonds in any lawful manner.

5. SAME—*failure to record its contract—proof by parol evidence.* Where a county board in open session agrees to have a parol contract made by it with another spread upon the record of its proceedings, which it fails to do, and the other party performs his part of the agreement, he may, in an action against the county for a breach of the contract, prove the same by parol, as the best evidence attainable.

6. CONTRACTS—*whether parol contract is merged in a written contract.* A parol contract is not merged in a written contract, when the first relates to a different subject-matter than that intended to be covered by the latter, and parol evidence of its terms is admissible.

7. SAME—*of their mutuality.* Where one party to a contract agrees to perform certain services, and performs the same, and the other party agrees to pay for the same, there will be no want of mutuality.

8. INTEREST—*unreasonable and vexatious delay.* Mere failure to pay a claim or demand, or the defense of such claim, will not necessarily constitute the delay in payment unreasonable and vexatious. To entitle the party to interest, the delay of payment must be both unreasonable and vexatious. A defense in good faith by a county board will not render the delay vexatious.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Perry County; the HON. G. W. WALL, Judge, presiding.

The county of Franklin issued to the Belleville and Eldorado Railroad Company 149 bonds of the county, of the par value of $1,000 each, 49 of which purported to be issued by the county under an act of the general assembly of the State of Illinois, approved November 6, 1849; and 100 of such bonds purporting to be issued by the county under an act of the general assembly of the State, entitled: "An act to incorporate the Belleville and Eldorado Railroad Company," approved February 22, 1861. On the 22d day of May, 1880, the county authorities being desirous of testing the validity of said bonds and the liability of the county for their payment, the board of county commissioners of said county entered into an agreement with appellees, attorneys at law, by which it was agreed on the part of appellees to commence the proper suit or suits and prosecute the same as attorneys of the county, without unreasonable delay, to a final determination, against the holders of said bonds and other proper persons. Appellees agreed, each, to give their personal attention to the prosecution and trial of said suit or suits and to use due diligence until final determination thereof, in the State and federal courts. In consideration whereof the county agreed to pay to appellees $250 at the commencement of the suits, and if the suit or suits were finally determined in favor of the county, and said bonds held to be illegal and not collectible, then to pay appellees the additional sum of $8,000. But if said suit or suits were not decided in favor of the county, "and sustained in the courts," appellees were to receive nothing but the $250. Appellees were required to make application for and secure injunction against the collection of taxes to pay said bonds. This contract was in writing, and duly entered of record.

Under this contract appellees filed a bill, in the name of the county, in the Franklin County Circuit Court, against the auditor and treasurer of the State, said railroad company, the county clerk and treasurer of said county, and the

unknown holders of the said several bonds. Such proceedings were had, that, on application of certain of the bondholders, the cause was removed to the United States Circuit Court for the Southern District of Illinois, and in June, 1882, was brought on for hearing. The case, however, was not decided until June, 1883. Bondholders representing 13 of the 49 bonds issued under the act of 1849, only, were before the court. It appears that said 13 of said 49 bonds, issued under the act of 1849, were held to be illegal, and decree rendered conclusive upon the rights of the holders of said 13 bonds, and the bill dismissed without predjudice as to the residue of said 49 bonds so issued under the act of 1849. It also appears, that holders of 36 bonds, only, of the $100,000, issued under the act of 1861, were before the court, and that the court rendered a decree finding the said bonds legal and issued in conformity with law, and dismissing said bill as to said bonds. It appears, also, that in July, 1883, appellees reported to the county board of said county the foregoing facts, and advised the prosecution of an appeal from that part of the order, or decree, holding said bonds valid and dismissing the bill, to the Supreme Court of the United States. The county board took the matter under advisement until November, 1883, and then declined to prosecute an appeal.

On the 7th of November, 1883, there being no final adjudication in respect of the remaining 36 of said 49 bonds issued under the act of 1849, the county and appellees entered into the following agreement:

"AGREEMENT.

It is hereby stipulated and agreed by and between William J. Allen and Thomas J. Layman, on the one part, and the County Board of Franklin county, Illinois, that if a writ of error or appeal shall be prosecuted by defendants from the Circuit Court of the United States to the Supreme Court of the United States in case lately decided by the said court, in case of the County of Franklin v. the Belleville

and Eldorado Railroad Company *et al.*, or from the Circuit Court of Franklin county, Illinois, to the Supreme Court of said State, or to the Circuit or Supreme Court of the United States, wherein the bonds of said county are involved in a suit decided at the October term, 1883, of said court, then, and in that event, said William J. Allen and Thomas J. Layman are to appear in either of said tribunals for said county on the hearing of such writ of error or appeal.

November 7, 1883.

This instrument is executed in view of settlement by said board this day with said Allen and Layman as to forty-nine county bonds declared void, and has no reference to the bonds issued by said county under the act of February 22, 1861. The said county hereby agreeing that if there is further litigation as to said bonds of 1861, and said Allen and Layman appear and have the same declared void, they are to be paid as per original contract with reference thereto.

WILLIAM J. ALLEN.
THOMAS J. LAYMAN.''

Upon the execution of which, the county paid to appellees $2,634.24, as the testimony tends to show, in settlement for the services rendered, and to be rendered, in respect of said 49 bonds, and being, as it would seem, a proportionate part of the said sum of $8,000.00 agreed to be paid in the event of success in defeating the whole of the 149 bonds.

It also appears that, by subsequent proceeding in the State court, the remaining 36 of said 49 bonds were decreed to be illegal, which has probably become *res judicata.*

On the trial of this cause the plaintiffs proved that at the same session of the board of commissioners of said county, the board refusing to appeal from the decree of the United States Circuit Court, in respect of said $100,000.00 of bonds, said board entered into another contract with appellees in respect of said last mentioned bonds. It is shown

that the board feared that a hearing would be delayed on appeal to the Supreme Court of the United States, and in the meantime the county be subjected to the levy made by the auditor of public accounts for payment of these bonds. It seems to have been understood, that a decision could be gotten quicker in the State courts, and it was thereupon agreed that if appellees would, as soon as practicable, obtain a decision of the Supreme Court of Illinois, declaring the tax levied for the payment of said bonds illegal, the county would pay appellees the further sum of $5,365.76, being the balance of the sum originally agreed to be paid, less the amount that day paid them. It was talked over, and agreed that the county would have one Richeson, or some other tax-payer, refuse to pay taxes levied to pay said bonds, and thereupon appellees should take charge of the litigation in endeavoring to enforce said tax, and prosecute the same through the Supreme Court. In 1884 the auditor levied a tax, for such purpose, upon the property of the county, whereupon said Richeson refused to pay the same as assessed against his property. And the same being returned delinquent, application was made by the collector, to the County Court of said county for judgment against the lands of said Richeson therefor. Appellees, under said employment by the county, appeared and filed objections on behalf of said Richeson, which were overruled by the court and judgment entered for the tax. An appeal was prosecuted by Richeson to the Supreme Court of the State, where the tax was held to be unlawfully levied, upon the ground that said bonds, and each of them, were illegally issued, and that there was no binding liabilty upon the county to pay the same. *Richeson* v. *The People ex rel. Jones, Collector, etc.*, 115 Ill. 450. The opinion in that case was filed in January, 1886, and the treasurer of the State, after the decision had been rendered, and said $100,000.00 had been declared by the State Supreme Court illegally issued and void, paid back to the county the taxes

that had been levied by the auditor and collected from the tax-payers of said county to pay interest on said bonds, and amounting to $9,069.00, which was received by the county. In July, 1886, the county board then being in session, by resolution appropriated said sum of money, etc.

At the time said last mentioned agreement was entered into with appellees by the county authorities, one of the appellees suggested that a memorandum should be made of the contract, or that the board should, by proper entry upon its records, evidence the same. The evidence shows conclusively that the members of the board—the board then being in session—agreed to enter an order of record showing the said agreement between appellees and the county, and that appellees, relying thereon, proceeded with the litigation with the result mentioned. It appears that the board failed to enter said order of record, of which appellees had no notice. There is no uncertainty as to these matters; they are testified to by appellees, by members of the board, and others.

On the 7th of June, 1886, the board of supervisors of said county (there having been a change to township organization in said county in 1885) being in session, appellees presented their account in writing, and demanded payment, which was refused, and this suit, brought subsequently, is to recover the same. The Circuit Court rendered judgment for $5,365.76, the amount stipulated, which, on appeal by the county to the Appellate Court, was affirmed, and the county prosecutes this further appeal, assigning various errors. Appellees assign for cross-error that the court erred in not allowing interest, at the rate of 6 per cent per annum, on the said principal sum from the date of demand and refusal to pay. Other facts are sufficiently noticed in the opinion.

Mr. F. M. YOUNGBLOOD, for the appellant.

Mr. W. K. MURPHY and Mr. W. J. N. MOYERS, for the appellee.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

I.  The first point made by appellant is that the court erred in admitting parol evidence of the contract of November 7, 1883, between the county and appellees. It is insisted that the instrument executed by appellees that day, and delivered to the county, was the best evidence of the agreement between the parties, and could alone be resorted to, to establish the agreement. This would undoubtedly be correct, if said written memorandum related to the subject matter sought to be proved by parol. By reference to that instrument, set out in the foregoing statement, it will be seen that it related only to such further litigation as might ensue upon appeal, or writ of error, by the defendants in the litigation theretofore prosecuted by the county, and such as pertained alone to the forty-nine bonds of the county, issued under the act of 1849. By an *addendum*, added at the suggestion of the county board, the $100,000.00 of bonds issued under the act of 1861, and the litigation in respect thereof, were expressly excluded from its operation. Moreover, appellees, members of the then county board, and perhaps others, testify, unequivocally, that the memorandum in writing related solely to the litigation in respect of said forty-nine bonds, and that the contract, proved by parol, was separate and distinct, and related to a different subject matter than that intended to be covered by said writing. It is manifest, therefore, that the contract, in respect of the subsequent litigation designed to test the liability of the county through tax-payers, etc., to pay said 100 county bonds, was not merged in the writing.

II.  It is also clear that resort was had to the best evidence obtainable in proof of said contract. It is shown by the testimony of appellees, and by a member of the board, that the board agreed, in open session, to have the contract that day entered into, by which appellees were to take charge of and prosecute to successful issue the question of

10—145 ILL.

the legality of a tax levied to pay said $100,000.00 of the bonds of the county, issued under the act of 1861, as before mentioned, spread upon their records. Which, however, was not done, and the matter, therefore, rested in parol.

III.   It is next objected, that parol evidence was not admissible to prove the contract made by the county, etc. This case falls directly within the rule announced in *The County of Vermilion* v. *Knight,* 1 Scam. 97, and under the reasoning in that case, which meets with our approval, the evidence was clearly admissible. It was the duty of the county board, independently of its agreement to do so, to enter its contract upon its records. And the contract having been clearly established, and appellees having in good faith performed the service contracted to be rendered, without notice of the failure of the county authorities to perform that duty, and the county having received the benefit of such service, and appropriated the money received from the State treasurer, should not be permitted to take advantage of the non-feasance of its own agents, if the contract was otherwise valid.

IV.   It is next objected, that the county could not lawfully enter into a contract to pay attorneys' fees, etc., in carrying on the litigation in the name of Richeson, who, it is contended, defended as a tax-payer in his individual capacity, and not for or on behalf of the county. It is to be at once conceded, that if the purpose of the contract was to aid Richeson in his private litigation, it was *ultra vires.* The fact that it may have relieved him, in common with other tax-payers of the county, of his share of a public burden, would not necessarily render it his individual litigation, if the purpose and object sought to be attained was a public one, in which all tax-payers of the county were alike interested. It is contended, however, that as the county was not, and could not be, a party to the litigation begun against Richeson by the county collector, that, therefore, the contract to pay expenses of such litigation was an under-

taking of the county to pay the expense of his private litigation, and made without authority of law. It is broadly conceded that the county had the right to institute and carry on suits to test the validity of its doubtful obligations, and to defend suits brought to enforce the same. But it is said that the statute having provided that "it shall be the duty of the county boards, in each of the counties of this State, to take and order suitable and proper measures for the prosecuting and defending of all suits to be brought by or against their respective counties, and all suits which it may become necessary to prosecute or defend, to enforce the collection of all taxes charged on the State assessment" (Sec. 33, Ch. 34, R. S.), the power of the county board is thereby limited, in its employment of counsel, to suits in which the county is a party, and where it will become necessary to prosecute or defend a suit to *enforce* the collection of a tax charged on a State assessment. And as the suit of Richeson was to *resist* the collection of a tax charged on a State assessment, the county was without authority to employ counsel therein.

We are not disposed to give this section of the statute the construction contended for. It is manifest that the county authorities, having determined, on account of the delay, and possibly for other reasons, not to prosecute an appeal to the Supreme Court of the United States from the decree of the Circuit Court of the United States, which in effect determined said $100,000.00 of bonds issued under the act of 1861 to be valid, desired to test the validity of these bonds in a more expeditious way. They undoubtedly knew that in any subsequent bill brought by the county, against the taxing officers and the holders of such bonds, the determination upon the former bill might be held to constitute a bar. They, therefore, for the purpose of securing the benefits to be derived from a favorable decision by the State courts, if it could be obtained, undertook that Richeson, or some other tax-payer,

who might be found willing to resist the collection of the tax, should be used for the purpose of testing, in the State courts, the validity of said bonds. It was understood and agreed in advance, that if Richeson, or other tax-payer, should refuse to pay the tax, and thereby raise the question in the courts, the county would assume the litigation and pay appellees for carrying it on. The purpose and object was not to relieve Richeson of his tax, although a successful issue would have that result, but was to obtain a decision that said bonds were invalid, and thereby relieve the property of the county of the burthen of paying the same, the primary object being to obtain the benefit for the county at large of a favorable decision in the State courts. It may be conceded, that a decision in favor of a tax-payer would not have the same conclusiveness as a decree in a direct proceeding in behalf of the county, to have said bonds declared void, without militating against the right of the county to prevent, in any lawful mode, the collection of taxes to pay county bonds illegally issued. The board is authorized to carry into effect the powers of the county, (Sec. 23, Ch. 34, R. S.), among which is: "To make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers." As we have seen, the power of the county board to resist the payment of an unjust claim against the county is unquestioned. And the county board could lawfully, under its general powers, take steps and perform such acts as might, in the exercise of its discretion, defeat the collection of a tax assessed to pay a debt illegally charged against the county. It is not to be supposed that because the auditor, under the act of the legislature, assessed a tax to pay bonds of the county, that the county is thereby precluded from questioning the validity of such bonds in any lawful manner. As said by the Appellate Court, a contract made for this purpose is within the object and spirit of the statute, and there is no good reason to

hold that the county might not lawfully adopt the mode it did to test the validity of its bonds. That which is within the object, spirit and meaning of the statute, is as much within the statute, as if it were within its letter. Potter's Dwar. 1170. The county had the right to have the statutes of this State, and the proceedings in pursuance of which said bonds were issued, passed upon and their validity determined by the courts of this State. This it had failed to do in the direct proceeding instituted by the county, but could procure in the mode shown to have been inaugurated by the county authorities, and carried through to final decision by appellees under their contract with the county. That the county was successful, we have already seen. And the State officers, and bondholders, so far as appears, acquiescing in such determination of the invalidity of the bonds, the State treasurer paid into the county treasury the taxes theretofore collected, under the levy by the auditor, to meet the accrued and accruing interest on said bonds.

We are of opininon, that such proceedings were within the spirit of the statute, and that the county board had authority to enter into said contract.

V. It is insisted that the contract was void for want of mutuality. This is a clear misconception of the contract. Appellees on their part agreed to perform the service, and performed it, and the county on its part agreed to pay for the same. The contention of counsel is undoubtedly predicated upon the assumption that the right to recover, if at all, is under the written memorandum, in reference to the forty-nine bonds, executed on the same day that the contract was entered into in reference to the 100 bonds issued under the act of 1861, of which the county board failed, as we have seen, to make a record. Treating the contract proved by parol as a subsisting and independent undertaking, there is no want of mutuality.

What we have said disposes of the questions raised upon the admission of evidence, instructions given and refused by the court. It only remains to consider the cross-error assigned.

It was insisted on oral argument that the court erred in not including in its judgment interest upon the sum found due from the date of demand of payment, until the rendition of the judgment, upon the ground and for the reason that the money had been "withheld by an unreasonable and vexatious delay of payment." Sec. 2, Ch. 74, R. S. We are unable to say in this case that it is affirmatively shown that the "delay" has been "unreasonable and vexatious." Mere failure to pay a claim or demand, or the defense of such claim, will not necessarily constitute the delay in payment unreasonable and vexatious. The delay must be both unreasonable and vexatious. *Aldrich* v. *Dunham*, 16 Ill. 403; *Devine* v. *Edwards*, 101 id. 138; *Davis* v. *Kenaga*, 51 id. 170. We are not satisfied that the county authorities have not refused payment in good faith, and with an honest belief that the county was not liable to appellees. If that be so, it was their duty to refuse payment, and to make every reasonble defense to the action. And it cannot be said, therefore, that the delay is vexatious.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*