## County of Henry, et al., v. Charles F. Stevens.

### Gen. No. 4,453.

1. INJUNCTION—*when bill does not justify issuance of.* A bill seeking an injunction to restrain a municipality from performing a contract as *ultra vires*, is insufficient where it fails to show that any act or acts have been performed under such contract or that any liability on account thereof has accrued or is to accrue against the municipality.

2. BILL OF COMPLAINT—*when answer does not aid.* An answer which in terms supplies the omissions of a bill of complaint does not so aid the same, if the answer is unresponsive, as to authorize the granting of an injunction.

3. CONTRACTS—*power of county board to make.* In general, a county board has power to make all contracts and to do all other acts necessary or expedient to the management and control of county property and concerns.

4. CONTRACT—*when not ultra vires.* A contract made by a county board with a private individual, by which the latter undertakes to search for property omitted from the assessment for a compensation to be paid, is not *ultra vires*.

Injunctional proceeding. Appeal from the Circuit Court of Henry County; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the October term, 1904. Reversed and remanded. Opinion filed April 25, 1905.

CHARLES E. STURTZ, State's Attorney, and SEARLE & MARSHALL, for appellants.

N. F. ANDERSON and HENRY WATERMAN, for appellee.

MR. JUSTICE VICKERS delivered the opinion of the court. Charles F. Stevens, a citizen and taxpayer of Henry

County, filed a bill to enjoin the county clerk, county treasurer, George H. Manlove and the county of Henry from carrying out a contract entered into between the board of supervisors, on behalf of the county, and George H. Manlove. The contract was one employing Manlove to make careful and diligent search for omitted and unassessed personal property and to report the same to the proper officials for assessment, if any should be found, and also to search for moneys due said county from other sources. The contract provided that Manlove should receive 20 per cent. on all moneys collected and paid into the county treasury through his efforts, provided the amount should in no case exceed the county's share of such money. Manlove executed a bond to indemnify the county against any costs, expenses or damages by reason of his actions under the contract.

The bill alleges that the contract is *ultra vires* and void and prays for an injunction to prevent the parties from carrying it out.

The defendants filed an answer to the bill under oath, admitting the making of the contract but denying the right of appellee to maintain the bill and claiming that the board of supervisors had the power under the law to make the contract in question. The case was heard on the bill and answer and a decree entered making the injunctions, issued when the bill was filed, perpetual, and this appeal follows.

Assuming that the county had no power to enter into the contract, had appellee, by virtue of his being a citizen and a taxpayer, such an interest in the subject-matter of litigation as to enable him to maintain the bill?

The remedy by injunction being "the strong arm of equity" should never be resorted to except in a clear case of irreparable injury, and only allowed when the court is convinced of the urgent necessity. Courts of equity will not enjoin an illegal act, merely because it is illegal. The act must invade or threaten the property or civil rights of the complaining party. High on Injunctions, sec. 20,

(2nd ed.). In the case at bar the charge is that the contract in question is *ultra vires* and void. No acts under the contract are set out and none shown to have been performed. It is not charged in the bill that any omitted or unassessed personal property could or would be found or that any such existed nor that there was even a reasonable probability that everything would be unearthed by Manlove that would be collected by or even claimed to belong to the county. Merely entering into the contract created no liability of the county to pay Manlove any compensation, and the contract expressly exempts the county from any liability for costs, expenses or damages by reason of Manlove's action under the contract. It is said, however, that the answer avers that there was a large amount of omitted and unassessed property, amounting to many thousands of dollars, on which a large amount of taxes would become due, etc., and this is evidence of the fact omitted from the bill. If the averments of the bill were such as to make evidence of this fact relevant, it is true the admission in the answer would supply all needed proof, but it is not a question of evidence but one of pleading. The answer in this regard does not purport to answer any specific averment in the bill, but is setting up a state of facts in justification of the contract. An answer in equity is only evidence when it is responsive to the bill, and its statements are not made on information and belief. Deimel v. Brown, 136 Ill. 586.

We are aware that many cases can be found, decided by our Supreme Court, where bills in equity, filed by a taxpayer to enjoin the illegal expenditure of the revenues of cities and other municipalities, have been sustained, but we have been unable to find any case that has gone to the extent of holding that the performance of a contract will be enjoined solely on the ground that it is illegal without any averment that its performance will injuriously affect the public revenues. Waiving any further discussion of this question, it is apparent the principal contention is over the question whether the county had the legal right to enter into the contract. It is a well-established doctrine

that counties are political divisions of the State for governmental purposes, and that they possess such powers as have been expressly conferred or necessarily implied. Colton v. Hanchett, 13 Ill. 616; Perry et al. v. Kinnear, 42 Id. 160; Scates v. King, 110 Id. 456.

Paragraph 3, sec. 24, ch. 34, Hurd's R. S. 1903, provides, that counties shall have power to make all contracts and do all other acts in relation to the property and concerns of the county, necessary to the exercise of its corporate powers. Among the powers of county board enumerated in sec. 25, ch. 34, R. S., are the following: "To manage the county funds and county business, except as otherwise specifically provided." Also, "To cause to be annually levied and collected taxes for county purposes, including all purposes for which money may be raised by the county by taxation."

Section 33 of the same chapter requires the board of supervisors to take proper measures to prosecute or defend all suits by or against the county, and all suits necessary to prosecute or defend to enforce the collection of all taxes charged on the State assessment. By section 276 of the Revenue Law it is provided that if any real or personal property has been omitted from assessment in any year or for any number of years the same shall, when discovered, be assessed by the assessor, and the average of taxes together with ten per cent. interest from the time the same should have been paid, shall be charged against said property.

That a valid claim exists for the proper amount of taxes which should have been levied against omitted property, is made clear by section 276 of the Revenue Law above cited. That section makes it the duty of the assessor to assess such omitted property when found. If property has been omitted, it is fair to presume that it was because the assessor failed to discover it. The contract with Manlove was intended to aid and assist the assessing officers to discover omitted property that had escaped taxation notwithstanding the official vigilance of the assessor. The duty is

imposed on the county board to manage the county business, to cause to be levied and collected county taxes, to prosecute and defend all suits necessary to collect all taxes on the State assessment, and the county has power to make all contracts and do all other acts in relation to the county property or concerns. Why, then, shall a contract to search for omitted property and report the same to the proper officers for assessment be held *ultra vires* and void? Taxation so levied that every person shall pay in proportion to the value of the property in his possession, is the constitutional mode of raising the revenue to meet the demands of government; without taxes there can be no revenue, without revenue no government, and without government no protection to life, liberty or property; it therefore follows that the levying and collection of the just share of taxes due from the property holders is one of the primary and vital concerns of the county. But it is said that granting the existence of the duty of the officials in this regard, they must be restricted to the use of the means and instrumentalities provided by the legislature to accomplish the purpose, and if they prove insufficient an appeal must be made to the legislature to provide others. There is much force in this argument; indeed its persuasive influence has led the Supreme Courts of California, Minnesota, North Dakota and Nebraska to hold contracts like the one under consideration *ultra vires* and void. Grannis v. Board of Comrs., 81 Minn. 55; Storey v. Murphy et al., 9 N. Dakota, 115; House v. Los Angeles Co., 104 Cal. 73; Platte Co. v. Gerrard, 12 Neb. 244. It is true that these cases are decided with reference to the local statutes of the different States and therefore cannot be held as authoritative in this State, unless we had a similar statute which had not been differently construed by our own courts. A general rule underlying all the cases is that the power to prescribe the means of compulsory collection of taxes belongs to the legislature; still many courts of the highest authority hold that the remedies provided by statute are not exclusive, and any other appropriate action may be resorted to that will accomplish the end.

In the following states it has been held that the legal levy of a tax creates an implied promise of the taxpayer to pay and that *indebitatus assumpsit* lies on such implied promise.    Perry Co. v. Selma, etc., R. R. Co., 58 Ala. 547; Dubuque v. I. C. R. R. Co., 39 Iowa, 56; Appeal Tax Ct. v. Western Maryland R. R., 50 Md. 275; Putnam v. Fife Lake Tp., 45 Mich. 125; Bergen v. Clarkson, 6 N. J. L. 352; State v. Georgia Co., 112 N. Car. 34;  State v. Memphis R. R. Co., 14 Lea (Tenn.), 56.

In this State it is provided by statute that the county board may cause an action of debt to be instituted to recover the personal property taxes which are shown to be delinquent by the collector's return.    See section 230, ch. 110, Hurd's R. S. 1903.   Under the power conferred by this section it was held in Ottawa Gas Light Co. v. The People, 138 Ill. 336, that while it is made the duty of the State's Attorney to prosecute all suits on behalf of the people to recover debts, revenues, fines and forfeitures, still in the exercise of its powers, the county board could employ any competent attorney to bring the suit, in the name of the people, notwithstanding the state's attorney was able and willing to act.   In this case it is said :   " We are not disposed, however, to hold that the county board is, by the statute defining the duty of the state's attorney, denied the power and authority to select and empower any competent attorney to represent the people in the beginning and prosecution of suits to recover delinquent taxes. * * * Whether or not resort shall be had to proceedings at law to recover of property owners the overdue and unpaid taxes levied thereon, rests in the discretion of the county board, and we have no doubt that under the general powers of the county board, as the fiscal agent of the county, it has the inherent right to direct the proceedings, and select the person and agencies through whom it will act."

In McClaughry v. Hancock Co., 46 Ill. 356, it is held that the county board had the power to appoint an agent to buy books and stationery for the circuit clerk's office, notwithstanding the statute provides that the clerk of the Circuit and County Commissioners Court shall provide all

the necessary books, with a safe, press or presses, with locks and keys, and requiring the county commissioners to make allowances for the same, and for articles of stationery necessary for the respective courts. This case goes to the extent of holding that the county board can appoint such agent and give him the exclusive right to buy and supply the court, and that in such case the right, under the statute, of the clerk to buy would be superseded by the agent's contract, so long as he furnishes the necessary supplies. See Barnard & Co. v. County of Sangamon, 190 Ill. 116.

In County of Franklin v. Layman, 145 Ill. 138, it is held that the county board has the power to employ counsel to test the legality of bonds issued by the county in aid of a railroad, and to agree to pay a contingent fee for such services. In this case the county was not a party, in its corporate capacity, but the action was an application for judgment by the collector and exception filed by a citizen, which being overruled by the County Court, the attorney prosecuted an appeal to the Supreme Court, which resulted in a reversal of the County Court, the Supreme Court deciding that the bonds were illegally issued (see Richeson v. People ex rel. Jones, 115 Ill. 450), whereby Layman and Allen became entitled to their fees. These authorities from our Supreme Court, while not in all respects like the case at bar, seem to us to warrant this court in holding that the contract with Manlove is not *ultra vires* and void.

Similar contracts have been upheld by the Supreme Court of Indiana in Richmond v. Dickinson, 155 Ind. 345; Garrigus v. Board of Com's, 157 Ind. 103; Fleener v. Litsey, 66 N. E. Rep. 82 (Ind.). The case of Gannaway v. McFall, 109 App. 23, is in principle somewhat like the case at bar, but we are constrained to hold, that the view there expressed is opposed to the clear implication of our Supreme Court in the cases above cited, and for this reason we cannot follow that case.

For the reasons herein given the decree of the Circuit Court is reversed and the cause remanded, with directions to the Circuit Court to dissolve the injunction and dismiss the bill.                    *Reversed and remanded.*